**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

MICHAELLA LYNN SURAT,

    Plaintiff,

v.

RANDALL KLAMSER, in his individual capacity, and
CITY OF FORT COLLINS, a municipality,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Michaella Lynn Surat, by and through her attorneys David Lane and Tania Valdez of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her Complaint and Jury Demand as follows:

### I. INTRODUCTION

1. On the night of April 6, 2017, Plaintiff Michaella Surat was with her boyfriend, Mitchell Waltz, at the Bondi Beach Bar in Fort Collins celebrating her twenty-second birthday.

2. After police officers were called regarding an altercation inside Bondi's involving Waltz, he was asked to leave. Fort Collins Police Services Officers Randall Klamser and Garrett Pastor arrived at the bar and spoke with a bouncer outside about what happened.

3. Ms. Surat walked past Defendant Officer Klamser toward Waltz, only to be stopped by Officer Klamser who was seeking to question Waltz, and who told Ms. Surat to "back off." Officer Klamser then grabbed Ms. Surat by her wrist and placed her in a rear wristlock hold.

1

4. Still holding Ms. Surat by the wrist, Officer Klamser violently threw Ms. Surat face-first to the ground. Ms. Surat's chin slammed into the sidewalk, causing cervical strain, a concussion, and a large and painful contusion on her chin that later turned purple and black. She also sustained painful bruising on her arms, wrists, knees, and legs.

5. The use of force against Ms. Surat was grossly excessive in violation of the Fourth Amendment to the United States Constitution, and resulted from the deliberately indifferent customs, practices, training, supervision and/or discipline of the City of Fort Collins.

6. Ms. Surat brings this action pursuant to 42 U.S.C. § 1983 against Officer Klamser and the City of Fort Collins for violating the rights guaranteed to her by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## II. JURISDICTION AND VENUE

7. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

8. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

9. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this Complaint.

## III. PARTIES

10. At all times relevant to this complaint, Plaintiff Michaella Surat was a citizen of the United States of America and a resident of the State of Colorado.

11. At all times relevant to this complaint, Defendant Randall Klamser was a citizen of the United States and a resident of the State of Colorado and was acting under color of state

2

law in his capacity as a law enforcement officer employed by the Fort Collins Police Services ("FCPS"). Defendant Klamser is sued in his individual capacity.

12. Defendant City of Fort Collins ("Fort Collins") is a Colorado municipal corporation and is the legal entity responsible for itself and for FCPS.

## IV.    FACTUAL ALLEGATIONS

### A. *Defendant Klamser used excessive force during the arrest of Ms. Surat.*

13. At the time of the incident, Plaintiff Michaella Surat was a student at Colorado State University in Fort Collins, Colorado, majoring in Human Development and Family Studies with a concentration in Early Childhood Professions.

14. Ms. Surat is five-feet, nine-inches tall and approximately 115 pounds.

15. On April 6, 2017, Ms. Surat and her then-boyfriend, Mitchell Waltz, went to Bondi Beach Bar in Fort Collins to celebrate her twenty-second birthday with some friends.

16. While inside Bondi Beach Bar, Waltz became involved in an altercation and was asked by Bondi's staff to leave the bar. Staff also called the police.

17. Defendant FCPS Officers Randall Klamser and Garrett Pastor arrived at Bondi Beach Bar shortly before 11:23 p.m. Defendant Klamser stood several feet in front of the bar doors and questioned a Bondi Beach Bar bouncer, Cory Esslinger, about what happened. Pastor stood further outside of the bar on the sidewalk talking to Waltz as Ms. Surat stood on the outside bar patio.

18. Ms. Surat left the patio, walked past Defendant Klamser toward Waltz, grabbed Waltz's arm, and tried to walk away with Waltz. She took only a few steps before Pastor stopped Waltz, and Defendant Klamser stopped Ms. Surat. Defendant Klamser told Ms. Surat that Waltz was not free to go, "but you can keep walking."

3

19. Concerned for her boyfriend, Ms. Surat stayed outside of the bar on the sidewalk and was several feet away from Waltz when Defendant Klamser again stopped her, stood in front of her, and told her to "back off," while pushing her right shoulder backwards with his hand.

20. Reasonably frustrated by Defendant Klamser's aggressive confrontation and condescending push to her shoulder, Ms. Surat told him, "you don't need to touch me."

21. In response, Defendant Klamser grabbed Ms. Surat's wrist. Frustrated by Defendant Klamser's painful and unnecessary restraint of her wrist and arm, Ms. Surat told Defendant Klamser, "you don't need to fucking touch me," as she attempted to free herself from his grasp.

22. Defendant Klamser, still holding Ms. Surat's wrist, pulled her arm behind her back and placed her in a rear wristlock hold.

23. Still grabbing Ms. Surat's wrist, Defendant Klamser demanded that Ms. Surat put her free hand up on her head. Simultaneously, Ms. Surat repeatedly asked Defendant Klamser why he was touching her. He responded that she was under arrest without giving any other explanation.

24. Speaking over one another, Ms. Surat again asked Defendant Klamser what she did and why he was touching her, and he again told her that she was under arrest. She asked Defendant Klamser, "can you explain to me why you're arresting me? What did I do?" This exchange continued for another several seconds. Defendant Klamser did not respond.

25. Defendant Klamser then said to Ms. Surat, "I don't want to throw you on the ground."

26. Defendant Klamser continued to force Ms. Surat's wrist in a rear wrist control hold and Ms. Surat, again, distressed and confused by the situation, asked Defendant Klamser

4

what she did wrong.

27. Defendant Klamser, still holding Ms. Surat's wrist, violently pulled Ms. Surat's arm and forcefully threw her face-down to the ground. Ms. Surat's chin slammed into the sidewalk, causing a concussion, cervical spine strain, and a large and painful contusion that later turned purple and black. She sustained other painful bruising on both of her arms, wrists, knees, and legs.

28. The entire encounter between Ms. Surat and Defendant Klamser happened in thirty-two seconds.

29. Defendant Klamser intended to harm Ms. Surat when he violently threw her to the ground to arrest her. Defendant Klamser is six feet tall and 203 pounds, which is much larger than Ms. Surat's 115-pound frame.

30. A reasonable person in Ms. Surat's place would have believed that she was not free to leave from the moment that Defendant Klamser had grabbed her wrist and refused to let go.

31. Defendant Klamser did not have a reason to believe that Ms. Surat had any weapon and Ms. Surat posed no threat whatsoever to the officers.

32. Ms. Surat was also humiliated during this experience. During Defendant Klamser's violent take-down of Ms. Surat, her dress rose above her hips and her lower buttocks and underwear were exposed. She remained face-down in this position while she was handcuffed by Pastor. Defendant Klamser was aware that Ms. Surat's lower buttocks were exposed, as they were uncovered and entirely visible in his bodycam footage during Ms. Surat's handcuffing.

5

33. Ms. Surat was forcefully lifted to her feet by the Defendant Klamser and Pastor. One of the officers partially attempted to fix her dress, but it was not pulled down enough and she was paraded through Old Town Square with part of her lower buttocks still exposed.

34. While Defendant Klamser walked with Ms. Surat toward a backup patrol vehicle, Ms. Surat, sobbing, asked other passersby for help. Ms. Surat then collapsed to the ground, and while still sobbing in extreme distress, she told Defendant Klamser that he was hurting her. She soon mustered the strength to get back on her feet, and she pleaded with individuals walking down the street to help her and to help pull her dress down because her dress was again at her hips. Several seconds later, a young woman helped Ms. Surat by pulling the skirt of her dress down.

35. Additional FCPS officers arrived at the scene, and Ms. Surat spoke with them about the incident while handcuffed in the patrol car. Ms. Surat was extremely distressed as she spoke with the officers.

36. Ms. Surat requested paramedic help for her injuries.

37. Ms. Surat proceeded through a misdemeanor jury trial in Ft. Collins on August 20-24, 2018. She was convicted of C.R.S. § 18-8-103 (Resisting Arrest) and C.R.S. § 18-8-104(1)(a) (Obstructing a Peace Officer) and sentenced to 12 months of supervised probation, 48 hours of community service, alcohol evaluation and treatment, monitored sobriety, and a Making Better Choices class.

### B. <u>Ms. Surat was evaluated by physicians at UCHealth and was diagnosed with cervical strain and several contusions all over her body. She suffered lasting physical and mental/emotional injuries.</u>

38. On the night of April 6, 2017, and into the morning of April 7, 2017, Ms. Surat was examined by Ken Philbeck, MD in the PVH Emergency Department at UCHealth. Dr.

6

Philbeck diagnosed her with "contusion of head, unspecified part of head."

39. Ms. Surat was then examined by Nicole Niemann, MD and Mollie Wolf, Physician Assistant, Certified (PAC) in the PVH Emergency Department at UCHealth. Dr. Niemann's diagnoses were contusion to other part of head, contusion of left forearm, contusion of right forearm, and contusion of left wrist. Dr. Wolf's physical exam showed a two centimeter in diameter ecchymotic area to her chin. Ms. Surat reported that she was in continual pain.

40. Later that day, Ms. Surat was examined by doctors Thomas Fralich, MD, Keasha Kuhnen, DO, and Mollie Wolf, PAC at UCHealth in the PVH Emergency Department for her chin contusion. She was given recommendations on how to care for her contusion and instructed to return for a follow-up appointment in several days.

41. By April 8, 2017, Ms. Surat's chin contusion had grown and become purple and black.

42. On April 11, 2017, Ms. Surat was evaluated by Dr. Julie Devita-Bailey, DO at UCHealth. Dr. Devita-Bailey noted that Ms. Surat presented with "Injury" and "Concussion." Ms. Surat was suffering from left hand pain and numbness, trouble focusing and thinking, headaches, and jaw, neck, and back pain. Dr. Devita-Bailey's physical exam showed that she had decreased cervical spine lordosis and tenderness with palpation of her left lateral neck. She also had mild to moderate spams of her neck and trapezius muscles (back of neck to top of back) bilaterally. Dr. Devita-Bailey referred Ms. Surat to the Emergency Room for an evaluation for her neck pain and headaches.

43. Ms. Surat was then seen by Dr. Travis Brown, DO at the UCHealth Emergency Room. She was diagnosed with "acute cervical strain" and "chin contusion." She was given pain relief medication during her visit and prescribed Flexeril to alleviate muscle spasms.

7

44. Ms. Surat had trouble chewing and opening her mouth all the way for approximately five or six months afterward. The bruises on her arms and legs continued to hurt for several weeks, and her neck was sore and difficult to move for several days. She was still confused and dizzy at times due to the head injury.

45. Ms. Surat also suffered mental and emotional harm from the incident. She received so many death threats and nasty comments online that she deactivated her social media accounts and avoided leaving her house for a while. To this day, people on the street still recognize her from the video, which went viral.

C. *Defendant Fort Collins' policies, customs and practices of conducting unlawful seizures and using excessive force were moving forces behind the violations of Ms. Surat's constitutional rights.*

46. Defendant Fort Collins has a policy, custom, and practice of unlawful seizure and use of excessive force.

47. As the FCPS internal affairs investigation concluded that the Defendant Officers acted lawfully and in accordance with FCPS policy, the reasonable inference is that the city's policy and training lead officers to act unconstitutionally.

48. Additionally, in response to the incident involving Ms. Surat, FCPS spokesperson Kate Kimble told the media that Defendant Klamser used "standard arrest control," which indicates a custom and practice of unconstitutional use of force.

49. Furthermore, Defendant Fort Collins has a responsibility to properly train and supervise its law enforcement officers in complying with constitutional requirements during encounters with citizens, and to discipline officers that violate such constitutional requirements.

50. FCPS has been involved in several high-profile excessive force cases. In December of 2013, FCPS officers similarly brutalized Stanley Cropp, an eighty-year-old man

with Alzheimer's disease and dementia. Mr. Cropp was aggressively tackled and apprehended by FCPS officers while taking a walk in his neighborhood before bed. Mr. Cropp was taken to Larimer County jail. The excessive force claims against the City of Fort Collins and FCPS settled for $113,000.

51. Only a few months before FCPS officers wrongfully seized and used excessive force against Ms. Surat, other FCPS officers similarly and unreasonably used excessive force against other members in the community. According to the complaint filed in *McGrath v. Fort Collins Police Services Officer Nick Rodgers*, on or about October 20, 2016, FCPS officers seized Dakota McGrath, who was suspected of third-degree assault, a misdemeanor. Mr. McGrath, who had gotten out of his car and was walking in an alleyway, had earbuds in and did not hear the officer approach. The officer caught up to Mr. McGrath and struck him in the head or neck with a steel baton, causing Mr. McGrath to fall to the ground, unconscious. Mr. McGrath regained consciousness but remained laying on the ground, dazed, when the officer struck Mr. McGrath's leg multiple times with the baton, fracturing his leg in several places. On information and belief, the case was settled for an undisclosed amount.

52. In July of 2016, FCPS came to a man named Enan Joe Heneghan's house for a noise complaint. Mr. Heneghan complied and turned down the music. The officer proceeded to search Mr. Heneghan's home without a warrant and without his consent, and pepper sprayed him in the face when he refused to show officers his ID. The City of Fort Collins settled Mr. Heneghan's case for $150,000.

53. Soon after the incident with Ms. Surat, on October 6, 2017, Kimberly Chancellor was driving when she noticed that a man on a motorcycle was following her. He continued following her as she pulled into the parking lot of her apartment complex. She hurried toward the

9

building to get away from him. When the man yelled that she was a cop and she was going to be arrested, she hesitated and stopped even though he still had not proven that he was an officer. After Ms. Chancellor handed the officer her identification, he put his hand on her and she tried to move away, still unsure that he was a police officer. He slammed Ms. Chancellor to the ground, put his knee in her back, and held her head to the ground, clearly an excessive use of force on someone who posed no danger to the officer.

54. Additionally, FCPS officers used excessive force in a recent egregious incident against Natasha Patnode, a woman who shoplifted at a Target store on March 29, 2018. An FCPS officer struck Ms. Patnode repeatedly punched and beat her with a baton while she was already on the ground and restrained. Another FCPS officer arrived and Ms. Patnode was tased multiple times, again while already restrained on the ground. This case has not yet been filed, but video footage makes clear that the FCPS officers' use of force blatantly exceeded the Fourth Amendment's scope of reasonableness.

55. Despite having notice that their policies, practices, customs, and insufficient training and supervision led to unconstitutional police conduct, Defendant Fort Collins continued not to provide adequate training to FCPS officers on complying with the requirements of the Fourth Amendment, including lawful seizure and how to conduct a lawful seizure without the use of excessive force.

56. Had Defendant Fort Collins implemented different training policy on seizures and the use of force, the officers would not have subjected Ms. Surat to the constitutional violations described herein. Thus, the Defendant Officers' illegal conduct was caused by Defendant Fort Collins' failure in its direction to and training of FCPS officers.

57. All of the acts described herein were done by the Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Ms. Surat's federally protected rights, and were done pursuant to the preexisting, deliberately indifferent official custom, policy, practice, training, and supervision.

58. It is the longstanding widespread deliberately indifferent custom, habit, practice and/or policy of Defendant Fort Collins to fail to supervise and to train officers in the rights of citizens to be free from unreasonable seizure and excessive force.

### V.   STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourth & Fourteenth Amendment Violation – Excessive Force
### (Against Defendant Klamser)

59. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

60. At all times relevant to the subject matter of this Complaint, Defendant Klamser was acting under color of state law in his capacity as an FCPS officer and within the scope of his employment.

61. At the time when Ms. Surat was seized, she had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in her person from unreasonable seizure through excessive force.

62. Any reasonable law enforcement officer knew or should have known of this clearly established right.

63. Defendant Klamser's arrest of Ms. Surat by, among other things, pulling her arm by her wrist and throwing her face-first to the sidewalk, used greater force than would have been reasonably necessary to effect the seizure.

11

64. Defendant Klamser's excessive use of force caused excruciating pain to Ms. Surat's head, chin, and neck, which required emergency medical attention. Her knees, wrists, arms and legs were painfully bruised. She also suffered physical and mental injury, including pain and suffering, humiliation, and other injuries, damages, and losses due to Defendant Klamser's actions. These injuries are not *de minimis*.

65. Defendant Klamser's actions, as described herein, were undertaken intentionally, maliciously, willfully, wantonly, and/or in reckless disregard of Ms. Surat's federally protected rights, which entitles Ms. Surat to punitive damages.

66. Defendant Klamser used excessive force in accordance with custom, policy, practice, and training provided and promulgated by Defendant Fort Collins.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Unconstitutional Policies, Customs, and Practices**
**(Against Defendant City of Fort Collins)**

67. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

68. Defendant Fort Collins established policies, customs and/or practices in violation of the Constitution.

69. Defendant Fort Collins developed and maintained law enforcement-related policies, customs, and/or practices exhibiting or resulting in a deliberate indifference to the Fourth and Fourteenth Amendment protected constitutional rights of persons in Fort Collins, which proximately caused the violation of Ms. Surat's constitutional rights.

70. Defendant Fort Collins failed to properly train and supervise its employees with regard to lawful seizures and lawful use of force.

71. Defendant Fort Collins has a duty to protect the constitutional rights of the members of the public from violations of those rights by members of their police department.

72. In light of the duties and responsibilities of those law enforcement officers that participate in providing safety and security for citizens and arrestees, the need for specialized training and supervision is so obvious, and the inadequacy of training and supervision is so likely to result in the violation of constitutional rights such as those described herein, that Defendant Fort Collins is liable for its failure to do so.

73. The inadequate training and supervision provided by Defendant Fort Collins resulted from a conscious or deliberate choice to follow a course of action from among various alternatives. Defendant Fort Collins could have and should have pursued reasonable methods for the training and supervising of such employees, yet failed to do so.

74. Defendant Fort Collins' policies, customs, or practices in failing to train and supervise its employees were the proximate cause of, and moving force behind, the violation of Ms. Surat's constitutional rights, which caused her damages as set forth above.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;

(b) Compensatory and consequential damages, including damages for physical injury, emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c) All economic losses on all claims allowed by law;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e) Attorney's fees and the costs associated with this action, as well as expert witness fees, on all claims allowed by law;

(f) Pre- and post-judgment interest at the lawful rate to the maximum extent allowed by law; and

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 26th day of March 2019.

KILLMER, LANE & NEWMAN, LLP

/s/ *Tania Valdez*_____
David Lane
Tania Valdez
1543 Champa Street, Suite 400
Denver, Colorado 80202
Tel: (303) 571-1000
Fax: (303) 571-1001
dlane@kln-law.com
tvaldez@kln-law.com

*Attorneys for Plaintiff*