IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-0901-WJM-NRN

MICHAELLA LYNN SURAT,

    Plaintiff,

v.

RANDALL KLAMSER, in his individual capacity, and
CITY OF FORT COLLINS, a municipality,

    Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, AND DENYING DEFENDANTS' MOTION TO SUPPLEMENT

---

This is a civil rights action brought under 42 U.S.C. § 1983 against Fort Collins police officer Randall Klamser ("Klamser") and the City of Fort Collins, Colorado ("Fort Collins") (together, "Defendants"). Plaintiff Michaella Lynn Surat ("Surat") alleges that Klamser used excessive force against her when arresting her, in violation of the Fourth Amendment. Surat further alleges that Klamser's excessive force was consistent with Fort Collins police policies or was the product of Fort Collins's failure to address an alleged pattern of excessive force by its police officers against citizens.

Currently before the Court is Defendants' Motion to Dismiss. (ECF No. 23.) For the reasons explained below, the motion is granted without prejudice as to Surat's claim against Fort Collins, and granted with prejudice as to Surat's claim against Klamser *except* to the extent Surat claims that Klamser used excessive force to overcome her resistance to arrest.

Also before the Court is Defendants' Motion to Supplement Their Motion to Dismiss Plaintiff's Complaint. (ECF No. 55.) The supplemental materials offered in this motion turn out to be irrelevant, and so the motion will be denied.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

The Court accepts the following facts as true for purposes of resolving Defendants' Motion to Dismiss. All citations to "¶," without more, are to the complaint (ECF No. 1).[1]

---

[1] Retelling the facts as alleged in the complaint is somewhat cold and academic compared to video of the events leading to this lawsuit—which, in Surat's words, "went viral."

2

On the night of April 6, 2017, Surat went with her then-boyfriend to a bar in Fort Collins to celebrate her twenty-second birthday. (¶ 15.) Plaintiff's boyfriend "became involved in an altercation" inside the bar, and bar staff asked him to leave. (¶ 16.) The bar staff also called the police. (*Id.*)

Two Fort Collins police officers responded to the scene: Defendant Klamser and Garrett Pastor (who is not a party to this case). (¶ 17.) They encountered Surat and her boyfriend outside the bar. (*Id.*) Pastor began to question Surat's boyfriend on the sidewalk outside the bar, while Surat stood nearby on the bar patio. (*Id.*) At the same time, Klamser was standing just outside the bar's entrance questioning a bar bouncer. (*Id.*)

For unspecified reasons, Surat at some point

> left the patio, walked past Defendant Klamser toward [her boyfriend], grabbed [her boyfriend's] arm, and tried to walk away with [him]. She took only a few steps before Pastor stopped [her boyfriend], and Defendant Klamser stopped Ms. Surat. Defendant Klamser told Ms. Surat that [the boyfriend] was not free to go, "but you can keep walking."

(¶ 18.) Surat, concerned for her boyfriend, remained standing near him, and Klamser then "told her to 'back off,' while pushing her right shoulder backwards with his hand." (¶ 19.) Surat responded by saying, "You don't need to touch me," and a struggle ensued. (¶¶ 20–21.) Specifically:

> . . . Defendant Klamser grabbed Ms. Surat's wrist. Frustrated by Defendant Klamser's painful and unnecessary restraint of her wrist and arm, Ms. Surat told Defendant Klamser, "you don't need to fucking touch me," as she

---

(¶ 45.) Indeed, police bodycam and bystander phone footage depicting almost the entire event is readily available on YouTube. But Defendants do not claim any discrepancy between Surat's written account (in her complaint) and the video. For purposes of this narrative, then, the Court will confine itself to the complaint.

3

> attempted to free herself from his grasp.
>
> Defendant Klamser, still holding Ms. Surat's wrist, pulled her arm behind her back and placed her in a rear wristlock hold.
>
> Still grabbing Ms. Surat's wrist, Defendant Klamser demanded that Ms. Surat put her free hand up on her head. Simultaneously, Ms. Surat repeatedly asked Defendant Klamser why he was touching her. He responded that she was under arrest without giving any other explanation.
>
> Speaking over one another, Ms. Surat again asked Defendant Klamser what she did and why he was touching her, and he again told her that she was under arrest. She asked Defendant Klamser, "can you explain to me why you're arresting me? What did I do?" This exchange continued for another several seconds. Defendant Klamser did not respond.
>
> Defendant Klamser then said to Ms. Surat, "I don't want to throw you on the ground."
>
> Defendant Klamser continued to force Ms. Surat's wrist in a rear wrist control hold and Ms. Surat, again, distressed and confused by the situation, asked Defendant Klamser what she did wrong.
>
> Defendant Klamser, still holding Ms. Surat's wrist, violently pulled Ms. Surat's arm and forcefully threw her face-down to the ground. Ms. Surat's chin slammed into the sidewalk, causing a concussion, cervical spine strain, and a large and painful contusion that later turned purple and black. She sustained other painful bruising on both of her arms, wrists, knees, and legs.
>
> The entire encounter between Ms. Surat and Defendant Klamser happened in thirty-two seconds.

(¶¶ 21–28.)

The event led to misdemeanor criminal charges, of which Surat was convicted:

> Ms. Surat proceeded through a misdemeanor jury trial in Ft. Collins on August 20–24, 2018. She was convicted of C.R.S. § 18-8-103 (Resisting Arrest) and C.R.S. § 18-8-104(1)(a) (Obstructing a Peace Officer) and sentenced to 12 months of supervised probation, 48 hours of community service, alcohol evaluation and treatment, monitored

4

sobriety, and a Making Better Choices class.

(¶ 37.)

Surat now sues Klamser for excessive force in effecting her arrest, in violation of the Fourth Amendment. (¶¶ 59–66.) She also sues Fort Collins, alleging that its policies, customs, practices, and/or failure to train caused Klamser to use excessive force. (¶¶ 67–74.) In other words, she brings a *Monell* claim against Fort Collins. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

### III. ANALYSIS

Defendants argue that Surat's claim against Klamser is barred by her subsequent misdemeanor conviction. (ECF No. 23 at 4–8.) They further argue that Surat's claim against Fort Collins fails because Klamser did not commit a constitutional violation, and Surat otherwise fails to plausibly plead *Monell* liability. (*Id.* at 8–11.) The Court will address these arguments in turn.

**A.　Excessive Force Claim Against Klamser**

　　1.　Surat's Convictions and the Potential Effect of *Heck v. Humphrey*

Surat's conviction for resisting arrest means she was convicted of "(a) [u]sing or threatening to use physical force or violence against the peace officer or another; or (b) [u]sing any other means which creates a substantial risk of causing bodily injury to the peace officer or another." Colo. Rev. Stat. § 18-8-103(1). Her conviction for obstructing a peace officer means she was convicted of "using or threatening to use violence, force, physical interference, or an obstacle" to "knowingly obstruct[], impair[], or hinder[] the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority." Colo. Rev. Stat. § 18-8-104(1)(a).

5

In this light, Defendants say that the U.S. Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars any claim by Surat against Klamser for excessive force. *Heck* says that a plaintiff may not bring a civil rights claim if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated [such as on appeal or through habeas proceedings]." 512 U.S. at 487. According to Defendants, a verdict in favor of Surat that Klamser used excessive force would imply the invalidity of her convictions for resisting arrest and obstructing a peace officer. (ECF No. 23 at 4–8.)

2. Admissibility of the Jury Instructions from Surat's Misdemeanor Trial

Defendants' *Heck* argument actually relies on a fact *not* alleged in Surat's complaint, namely, that she presented a "defense of a person" defense at her misdemeanor trial, which the jury necessarily rejected in light of her convictions. (*Id.* at 6–7.)[2] Defendants submit the jury instructions from Surat's trial to prove as much. (*See* ECF No. 23-1 at 12–14.) In this light, say Defendants, it is clear that Klamser acted lawfully.

Surat responds that "[t]he Court should not consider Defendants' arguments that rely on the jury instructions in Plaintiff's criminal case, which constitutes information outside of the four corners of the Complaint and is therefore improperly referenced on a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6)." (ECF No. 28 at 4.) As a general matter, Surat is right. A court ruling on a Rule 12(b)(6) motion normally must

---

[2] "Defense of a person" is Colorado's generic name for the defense that encompasses both self-defense and defense of a third person. *See* Colo. Rev. Stat. § 18-1-704; Colo. Jury Instr., Criminal H:11 (June 2019 update).

6

not look beyond the complaint (and any attachments, *see* Fed. R. Civ. P. 10(c)) when deciding what the facts of the case are. *See, e.g.*, *Casanova v. Ulibarri*, 595 F.3d 1120, 1124–25 (10th Cir. 2010). Considering any other document generally triggers a requirement that the court convert the motion to one for summary judgment under Rule 56, and to proceed accordingly. *See* Fed. R. Civ. P. 12(d).

But a court may consider a document outside the pleadings, without departing from a Rule 12(b)(6) analysis, if the document is (1) "mentioned in the complaint," (2) "central to [the] claims [at issue]," and (3) not challenged as inauthentic. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).[3] Similarly, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Among those matters of which a court can take judicial notice are "its own files and records, as well as facts which are a matter of public record." *Id.* (internal quotation marks omitted).

Surat offers no argument why the jury instructions are not a matter of public record. Accordingly, the Court may consider them without converting Defendants' motion to a Rule 56 motion. In any event, as will become clear below, it turns out that the Court's disposition below is only slightly different when taking the jury instructions

---

[3] "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *see also Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) ("it would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when the delayed consideration of the remaining documents would lead to dismissal of that claim").

into account, as compared to not.[4]

### 3. "Defense of a Person" Instructions

At Surat's misdemeanor trial, the court instructed the jury that Surat

> was legally authorized to use physical force upon another person [*i.e.*, Klamser] without first retreating if:
>
> 1. she used that physical force in order to defend herself or a third person from what a reasonable person would believe to be the use or imminent use of unlawful physical force by that other person, and
>
> 2. she used a degree of force which a reasonable person would believe to be necessary for that purpose, and
>
> 3. she was not the initial aggressor, or, if she was the initial aggressor, she had withdrawn from the encounter and effectively communicated to the other person her intent to do so, and the other person nevertheless continued or threatened the use of unlawful physical force.

(ECF No. 23-1 at 12.) Apparently with reference to "unlawful physical force" in the first element, the court further instructed the jury:

> A peace officer is justified in using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it necessary:
>
> (a) To effect an arrest or to prevent the escape from custody of an arrested person unless he knows that the arrest is unauthorized; or
>
> (b) To defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force while effecting or attempting to effect such an arrest or while preventing or attempting to prevent such an

---

[4] Defendants' Motion to Supplement, filed approximately four months after completion of briefing on the Motion to Dismiss, asks the Court to take judicial notice that Surat's misdemeanor conviction was affirmed on appeal to Larimer County District Court. (ECF No. 55.) However, Surat's response to the Motion to Dismiss (ECF No. 28) does not mention her then-pending appeal to the district court, much less argue that the appeal might lead to reversal of her convictions, making *Heck* inapplicable. Thus, the Motion to Supplement adds nothing relevant to the Court's analysis here, and is denied on that basis.

escape.

(*Id.* at 14.)

Finally, the court instructed the jury that the prosecution bore the burden to negate the elements of the defense beyond a reasonable doubt. (*Id.* at 12.) "[I]f you decide the prosecution has failed to meet this burden of proof," the jury was told, "then the prosecution has failed to prove [that Surat's] conduct was not legally authorized by this defense, which is an essential element of obstructing a peace officer and resisting arrest. In that event, you must return a verdict of not guilty of those offenses." (*Id.* at 12–13.)

4. <u>Surat's Response and Defendants' Reply</u>

In response to Defendants' *Heck* argument, Surat says she is

> not challenging the validity of her resisting arrest and obstruction convictions in this matter. She is not arguing that the arrest was unlawful. Rather, Plaintiff is alleging that her lawful arrest was conducted in an unlawful manner because the amount of force that Defendant Klamser used to arrest her was unreasonable. Even where a person fails to follow an officer's orders, the officers are not entitled to employ anything more than reasonable force to make an arrest. Regardless of the fact that Plaintiff was convicted of resisting arrest and obstruction, Plaintiff sufficiently pled that Defendant Klamser's force—pulling her arm by the wrist and throwing her face-first onto the sidewalk hard enough to cause a concussion, chin contusion, cervical strain, and severe bruising—was excessive because it was greater force than necessary to effect the arrest.

(ECF No. 28 at 3–4 (citations omitted).)

In reply, Defendants say that "the allegations contained in [Surat's] complaint . . . [are that] that the officer's use of force was contemporaneous with the arrest and all occurred in thirty-two seconds," so Surat's framing of her claim in her response brief "does not comport with the Complaint," which shows that all of the relevant events

9

"occurred contemporaneously with the takedown." (ECF No. 34 at 1, 5.) Thus, according to Defendants, Surat cannot separate the takedown from the remainder of her claim. (*Id.*)

5. Scope of Surat's Allegations

The first argument the Court must resolve is Defendants' last argument, *i.e.*, that Surat's complaint simply does not say what she claims it says. Defendants are partly correct and partly incorrect.

The complaint nowhere says that the excessive force at issue is limited to the takedown. It says, rather, "Defendant Klamser's arrest of Ms. Surat by, *among other things*, pulling her arm by her wrist and throwing her face-first to the sidewalk, used greater force than would have been reasonably necessary to effect the seizure." (¶ 63 (emphasis added).) And, to be sure, there are "other things" alleged, such as Klamser's "painful and unnecessary restraint of her wrist and arm" and (separately) the "rear wristlock hold," both occurring before the takedown. (¶¶ 21–22.)

But Surat's response brief shows that, in light of Defendants' *Heck* argument, she is abandoning "among other things," and is narrowing her claim to the takedown. In this light, the Court deems Surat to confess Defendants' *Heck* argument as to everything before the takedown, and Defendants' motion will be granted with prejudice as to any claim of excessive force based on Klamser's alleged pre-takedown actions.

6. Effect of *Heck* Under the Circumstances

The question for the Court, then, is whether *Heck* bars a claim that the takedown amounted to "greater force than would have been reasonably necessary to effect the seizure." (¶ 63.) In *Martinez v. City of Albuquerque*, 184 F.3d 1123 (10th Cir. 1999), the Tenth Circuit made clear that *Heck* does not bar an excessive force claim—even for

someone found guilty of resisting arrest—if the *force used to overcome that resistance* was excessive:

> Martinez' state court conviction [was] be based on the fact that he resisted a lawful arrest by failing to heed the arresting officers' instructions and closing his vehicle's window on the arm of one of the arresting officers. That might justify the officers' use of reasonable force to effectuate Martinez' arrest, but would not authorize the officers to employ excessive or unreasonable force in violation of Martinez' Fourth Amendment rights. Thus, whether Martinez resisted arrest by failing to heed instructions and closing his vehicle's window on the officer's arm is likewise a question separate and distinct from whether the police officers exercised excessive or unreasonable force in effectuating his arrest. The state court's finding that Martinez resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue him.

*Id.* at 1126–27.

As Defendants point out, however, several unpublished dispositions from the Tenth Circuit and this District seem to have settled on the rule that if a § 1983 plaintiff (i) has been tried for resisting arrest, (ii) argued self-defense to the jury in that trial, and (iii) was nonetheless convicted, *Heck* bars any claim for excessive force arising from that arrest. *See Adams v. Dyer*, 223 F. App'x 757, 761 (10th Cir. 2007); *Johnson v. Heinis*, 2013 WL 1855843, at *3–4 (D. Colo. Mar. 28, 2013), *report and recommendation adopted*, 2013 WL 1855841 (D. Colo. May 1, 2013); *Dye v. Colo. Dep't of Corr.*, 2013 WL 1232196, at *7–8 (D. Colo. Mar. 26, 2013); *Oates v. Patella*, 2012 WL 592866, at *4 (D. Colo. Feb. 1, 2012), *report and recommendation adopted*, 2012 WL 592893 (D. Colo. Feb. 22, 2012); *Kennedy v. Golden*, 2014 WL 3819486, at *5 (D. Colo. Aug. 1, 2014); *see also Agyemang v. City of Aurora Mun. Court*, 2015 WL 2207632, at *3 (D. Colo. May 8, 2015) (similar analysis, without mentioning whether the

11

plaintiff had argued self-defense).

These cases are not binding, but the Court has carefully considered them nonetheless, and it is difficult to tell if these cases really stand for the rule that Defendants glean from them. In most of these opinions, the court's factual recitation provides few details about the altercation with the police officer and what behavior the prosecutors argued to the jury as satisfying the elements of resisting arrest (or as overcoming the elements of self-defense).[5] Without that information, it is difficult to know whether a successful excessive force claim "would necessarily imply the invalidity of [the] conviction or sentence." *Heck*, 512 U.S. at 487.

The self-defense jury instruction plainly requires force in response to preexisting (or at least imminent) force (*see* Part III.A.3, above). Thus, the defendant who loses her self-defense argument cannot, as a § 1983 plaintiff, argue that the preexisting force— the force to which she says she was reacting in self-defense—was excessive. *That* would necessarily imply the invalidity of the conviction. If that was the circumstances in the above-cited unpublished cases, then they were correctly decided.

However, it is clear after *Martinez* that that there is no necessary inconsistency with a resisting-arrest verdict (or an obstruction verdict, as in this case) if a civil jury were to find that the force used to overcome a suspect's resistance was excessive. 184 F.3d 1126–27. The fact that the suspect was resisting justifies the conviction, and the failure of the self-defense argument conclusively establishes that *the force which provoked the resistance* was lawful. But *the force used to end that resistance* is a

---

[5] With respect to the persuasive value this Court should give these unpublished decisions, it is notable that in all but one of these cases (*Dye*), the plaintiff was *pro se* and imprisoned, necessarily limiting the factual development of the case.

separate question.  *Cf. Fresquez v. Minks*, 567 F. App'x 662, 666 (10th Cir. 2014) (in an Eighth Amendment excessive force context, "reject[ing] Defendants' argument that slamming a prison inmate on the ground with enough force to break his teeth is necessarily a reasonable use of force so long as the inmate did something 'obstructive' first").

Indeed, this distinction should be intuitive.  Did Surat's struggle against Klamser's wristlock hold authorize Klamser to use *any* amount of force to subdue Surat?  Could he have shot her legs out from under her instead of throwing her to the ground, at his option?  Or shot her dead?  The Court hopes it is obvious to Defendants that the answer is "no."  *Cf. Tennessee v. Garner*, 471 U.S. 1, 9–12 (1985).

The Court does not rule out the possibility of a case in which the force used to effect an arrest—which the arrestee-plaintiff resisted, thus leading to a criminal conviction—and the force used to end the arrestee-plaintiff's resistance cannot be parsed and analyzed separately for *Heck* purposes.  Here, however, Defendants simply pronounce the relevant events "contemporaneous," as if saying it makes it so.  (ECF No. 34 at 1.)  Surat alleges that "[t]he entire encounter between [herself] and Defendant Klamser"—apparently meaning from his refusal to allow her to drag her boyfriend away to the point where she struck the ground—"happened in thirty-two seconds."  (¶ 28.)  Fourth Amendment excessive force analyses have turned on parsing conduct that occurred in far shorter time periods.  *See Waterman v. Batton*, 393 F.3d 471, 481–82 (4th Cir. 2005), *cited with approval in Thomas v. Durastanti*, 607 F.3d 655, 666 (10th Cir. 2010). Moreover, in the midst of the struggle, Klamser said to Surat, "I don't want to throw you on the ground," and the encounter continued for a few seconds after that

13

(¶¶ 25–26)—plausibly suggesting that Klamser had time to consider whether the circumstances merited the takedown maneuver that he eventually executed.

Accordingly, as pleaded, a finding by the jury that Klamser's takedown was more forceful than necessary under the circumstances would not "necessarily imply the invalidity," *Heck*, 512 U.S. at 487, of Surat's convictions.

### 7. Proper Framing of Surat's Claim

*Heck* nonetheless imposes a formidable burden on Surat, even before taking the jury's rejection of her self-defense argument into account.

"Excessive force" under the Fourth Amendment means that the police officer seized the person with more force than was objectively reasonable under all the circumstances then known to the officer, with due "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). In this light, it is highly significant that the jury convicted Surat of:

- "[u]sing or threatening to use physical force or violence against the peace officer or another; or * * * [u]sing any other means which creates a substantial risk of causing bodily injury to the peace officer or another," Colo. Rev. Stat. § 18-8-103(1); and

- "using or threatening to use violence, force, physical interference, or an obstacle" to "knowingly obstruct[], impair[], or hinder[] the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority," *id.* § 18-8-104(1)(a).

14

To avoid implying the invalidity of these convictions, Surat must prove that Klamser's takedown was objectively unreasonable under all the circumstances *while taking as given* that he was attempting to effect an arrest and, in the process, the arrestee's actions were subjecting him to, or threatening him with, physical force or violence, or putting him at substantial risk of bodily injury. *Cf. Martinez*, 184 F.3d at 1127 ("the [district] court [on remand] must instruct the jury that Martinez' state arrest was lawful per se").

Moreover, if one accounts for the failure of the self-defense argument, Surat must prove that Klamser's takedown was objectively unreasonable while taking as a given all of the foregoing *and* the fact that Klamser had first attempted to subdue Surat through *lawful lesser force*.

Finally, if Klamser ever asserts qualified immunity (he has not done so in the Motion to Dismiss), then Surat's burden is even more formidable. She must prove that it was clearly established as of April 6, 2017, that a police officer attempting to effect a arrest and being subjected to or threatened with physical force or violence, or facing a substantial risk of bodily injury, and who has already tried lawful lesser force to subdue the arrestee, cannot use the takedown maneuver used in this case to eliminate that actual or threatened force or risk of injury. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.").

\* \* \*

Defendants present no argument beyond *Heck* for dismissing the excessive force claim against Klamser.  Accordingly, for the reasons explained above, Defendants' Motion to Dismiss is denied to the extent Surat claims that the force Klamser used to overcome her resistance was excessive, but otherwise granted.

**B.     *Monell* Claim Against Fort Collins**

Defendants argue that Surat's attempt to hold Fort Collins liable under *Monell* fails because Klamser committed no constitutional violation.  (ECF No. 23 at 8–9.)  In light of the above, however, Klamser still faces potential liability under the force-used-to-overcome-resistance theory.  Thus, Surat's *Monell* claim cannot be dismissed on this basis.

Defendants further argue that Surat has not adequately pleaded her *Monell* claim.  (ECF No. 23 at 9–11.)  Surat's *Monell*-related allegations are essentially twofold: (1) a Fort Collins internal affairs investigation concluded that Klamser "acted lawfully and in accordance with [Fort Collins police] policy," creating a "reasonable inference that the city's policy and training lead officers to act unconstitutionally" (¶ 47); and (2) five other allegedly similar use-of-force incidents, some of them leading to six-figure civil settlements, occurred in the timeframe between 2013 and 2018, thereby demonstrating that excessive force is a pattern among Fort Collins police officers and Fort Collins is doing nothing to stop it (¶¶ 50–56).

The Court need not decide whether it is appropriate to consider these kinds of allegations when ruling on a Rule 12(b)(6) challenge to a *Monell* claim because Surat's allegations are not tailored to the burden she faces in this case.  Again, to avoid violating *Heck*, it must be taken as given that Klamser was attempting to effect Surat's arrest through a lawful use of lesser force, and that Surat's resistance amounted to

physical force or violence against Klamser and/or threatened him with substantial bodily harm.  Surat does not explain why an internal affairs investigation clearing Klamser under *those* circumstances could plausibly suggest unconstitutional policies, and Surat has not alleged any prior use-of-force by a Fort Collins police officer that comes close to this factual scenario.

For these reasons, the Motion to Dismiss will be granted as to Surat's *Monell* claim against Fort Collins.  The Court is skeptical that Surat could amend to state a viable claim, but the Court cannot say with certainty that Surat could never allege additional facts which would plausibly suggest *Monell* liability.  Accordingly, the Court will dismiss without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 23) is GRANTED with prejudice as to any claim that Defendant Klamser used excessive force prior to the takedown maneuver that ended Plaintiff's resistance to arrest, GRANTED without prejudice as to Plaintiff's *Monell* claim against Defendant Fort Collins, and otherwise DENIED; and

2. Defendants' Motion to Supplement Their Motion to Dismiss Plaintiff's Complaint (ECF No. 55) is DENIED.

Dated this 24th day of February, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge