IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00901-WJM-NRN

MICHAELLA LYNN SURAT,

Plaintiff,

v.

RANDALL KLAMSER in his individual capacity, and
CITY OF FORT COLLINS, a municipality,

Defendants.

---

**DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS (ECF 108) AND MOTION FOR SUMMARY JUDGMENT (ECF 118)**

---

Defendants RANDALL KLAMSER, in his individual capacity, and the CITY OF FORT COLLINS, a municipality, ("City"), submit the following as their Combined Reply in Support of their Motion to Dismiss (ECF 108) and Motion for Summary Judgment (ECF 118):

## I. REPLY TO PLAINTIFF'S INTRODUCTION

Plaintiff's response ignores the Court's direction respecting her burden, and the necessity of presenting evidence overcoming invalidation of her convictions pursuant to ***Heck***. It is conclusive that Ms. Surat used physical force and violence against Officer Klamser, and that he attempted first to effectuate her arrest with a lawful and lesser-degree of force. Officer Klamser is, therefore, entitled to qualified immunity.

With respect to the claim against the City, the response merely repurposes prior, dissimilar incidents, while failing to substantively establish any unconstitutional custom, practice, policy or

procedure within the framework provided by this Court. There is no evidence presented establishing an unconstitutional policy while at the same time considering "Klamser was attempting to effect Surat's arrest through a lawful use of lesser force, and that Surat's resistance amounted to physical force or violence against Klamser and/or threatened him with substantial bodily harm." [ECF 84 at 16-17.]

## II. REPLY CONCERNING PROCEDURAL POSTURE

Plaintiff's request to convert Defendants' Motion to Dismiss into one for Summary Judgement, should be denied. The Motion to Dismiss does not raise factual issues outside of the pleadings, nor does Plaintiff provide support for the notion her burden is "greater" pursuant to a summary judgment standard.

## III. REPLY CONCERNING UNDISPUTED FACTS ("RCUF")

5-8. Deny. Pursuant to Officer Klamser's testimony, he was not aware of what Officer Pastor was "dealing with", as he was engaged with Surat. Furthermore, Officer Klamser testified he did not feel as though he could have a conversation with Officer Pastor [Dep. of Officer Randall Klamser, ***Exhibit J***, at 59:1-10 & 24-25; 60:1; 69:7-15].

10. Deny. From Officer Klamser's perspective, Ms. Surat was yelling. [*See* ECF 118-1 at 4[1]]. Officer Klamser's report does not state Surat was yelling at the same time Pastor was speaking with Waltz. Rather, Officer Klamser identifies Waltz, whom Pastor was speaking with, as the person Surat was yelling at when Klamser and Pastor arrived [*See* ECF 118-1 at 4].

[1] Defendants' Motion for Summary Judgment, erroneously referenced page 3.

11. Deny. Officer Pastor's body-cam video shows Plaintiff bumping her left shoulder into Officer Klamser [Ex. I at 1:15][2]. From Officer Klamser's perspective, Plaintiff bumped into him [ECF 118-1 at 3-5]. Cory Esslinger confirmed Plaintiff bumped into both him and Officer Klamser [ECF 128-3 at 3:9-11].

12-13. Admit in part. At the point where Plaintiff grabs Mr. Waltz' arm, Officer Klamser had enough information to detain Waltz. Officer Klamser subsequently yelled to Officer Pastor that Waltz was not free to go. Deny Plaintiff's indication in RMMF 13 that she did not try to pull Mr. Waltz away from Pastor, as it was Officer Klamser's perception. [ECF 118-1 at 4].

18. Deny. Plaintiff offers no testimony disputing the crowd was beginning to react to what was occurring, nor does she offer any pertinent evidence refuting the testimony of Mr. Esslinger.

21-22. Deny. Figuratively, from Officer Klamser's perspective, Surat attempted to "walk through him" after he positioned himself between her and Officer Pastor [MSMF 16; *See also* ECF 118-1 at 4]. Plaintiff's response does not address Officer Klamser's command to "keep walking," which Surat ignored. [MSMF 21, citing Ex. A, at 4-5; Ex. B, at 00:55 to 1:05; Ex. D, at 12:18-21;15:6-11; Ex. G at 46:6-19; 48:6-8 , and; Ex. I, at 01:37 to 01:55]. Defendants admit Officer Klamser attempted to stop Ms. Surat from approaching Officer Pastor and Waltz, and she was instructed to "back off". Officer Klamser admits he touched Plaintiff's shoulder, because she would not comply with his lawful orders, and she continued her efforts to interfere with Officer Pastor. [Ex. A, at 4-5]. Defendants admit at some point Plaintiff said, "You don't need to touch

---

[2] Exhibit I (Officer Pastor's body-cam video) was conventionally submitted to the Court, with Defendants' Motion to Summary Judgment.

me" and "You don't need to fucking touch me." [*See* MSMF 24]. Defendants admit Officer Klamser grabbed Plaintiff's wrist, because she was under arrest [ECF 118-1 at 4-5], but deny he was immediately able to place Ms. Surat's arm behind her back. [***Ex. J,*** 70:11-17]. Plaintiff does not address the other efforts by Officer Klamser to prevent Plaintiff from interfering with Officer Pastor, including telling Ms. Surat "no" and pointing away from where Officer Pastor was interviewing Mr. Waltz, none of which deterred Plaintiff. [MSMF 22].

23. Deny. Plaintiff offers no substantive evidence refuting the testimony of Mr. Findlay [MSMF 23; *See also* Ex. A, at 5 ("FINDLAY said I was being very reasonable with SURAT even though she was being so verbally abusive.") (capitalization in original)]. Plaintiff offers no basis for arguing the "degree to which [she]…was resisting and obstructing…" [RMMF 23, ftnt. 2]. Any such argument is precluded by Surat's conviction and rejection of her self-defense argument [*See* eg. ECF 84 at 10; ("But Surat's response brief shows that, in light of Defendants' *Heck* argument, she is abandoning 'among other things,' and *is narrowing her claim to the takedown*. In this light, the Court deems Surat to confess Defendants' *Heck argument as to everything before the takedown*, and Defendants' motion will be granted with prejudice as to any claim of excessive force based on Klamser's alleged pre-takedown actions") (emphasis added); *See also* ECF 84 at14-15]. Plaintiff's argument regarding the degree of resistance, should be precluded.

24. Deny. *See* RCUF 21-22, above. Plaintiff's response fails to address Findlay's testimony [ECF 118-3, at 17:4-11; *See also* Dep. of Michael Findlay, ***Exhibit L***, at 33:18-19; 42:6-8]. Plaintiff mis-cites Deputy Chief Yeager's testimony. After viewing the body-cam footage, Deputy Chief Yeager testified he could not *see* Surat strike Officer Klamser-not that she did not strike Officer Klamser. [ECF 128-5, 40:5-11]. Merely because the video may not show a strike,

does not mean it did not occur. Mr. Montgomery's report is also *consistent* with Deputy Chief Yeager's testimony [ECF 128-6; ("Nowhere in the videos I have evaluated do I *see* evidence that Ms. Surat was, "hitting and/or grabbing". (emphasis added))]. Plaintiff's position is inconsistent with Mr. Findlay's eye witness testimony [ECF 118-3, at 17:4-11; ***Ex. L***, at 33:18-19; 42:6-8]. Defendants' expert Don Black identifies the eye-witnesses' testimony supporting the fact Surat struck Officer Klamser [*See* Expert Report of Donald Black***, Exhibit K***, at 4 ("There are statements by witnesses Findlay and Brooks that Ms. Surat was striking at Officer Klamser.")].

25. Deny. Plaintiff mis-cites Deputy Chief Yeager's testimony. After viewing the body-cam footage, Deputy Chief Yeager testifies he cannot *see* Surat put her hand around Officer Klamser's throat, not that she did not put her hand around Officer Klamser's throat. [ECF 128-5, at 39:25-40:4].

27. Deny. From Officer Klamser's perspective, he could no longer see what Officer Pastor was doing, as one-hundred percent of his attention was now directed at Surat [ECF 118-6, at 50:11-12]. Plaintiff offers no testimony refuting this position. Furthermore, Montgomery's determination that the assistance of an officer or supervisor could have been requested, ignores the "split-second judgment" made by police officers, such as Officer Klamser. [***Ex. K***, at 2 (referring to *Graham v. Connor*)], and the matter unfolded in "seconds" [***Ex. K***, at 3]. Mr. Montgomery's opinion relies on "20/20 hindsight," which is precluded in an excessive force analysis. [***Graham***, 490 U.S. at 397, referring to ***Terry v. Ohio***, 392 U.S. 1, at 20-22 (1968)]. Montgomery admits his opinions are 20/20 hindsight [Dep of Dan Montgomery, ***Exhibit N***, 92:6-23].

Montgomery ignores the fact "there was no reason to initially call for a supervisor or another officer" as this was from the onset "a fairly routine contact." [***Ex. K***, at 3]. "The primary

focus was on Mr. Waltz as a possible suspect in a crime" and "officers are taught to act from a contact and cover principle." [***Ex. K***, at 3; c.f. MSMF 27 and ECF 118-6]. "A frame by frame examination of the bodycams of Officer Klamser [and] Officer Pastor shows clearly why the situation was handled as it was. Officer Klamser's attempt to verbally stop Surat escalates into physical resistance and assault by Surat within a matter of ten seconds." [***Ex. K***, at 3]. As identified by Mr. Black, Plaintiff provides no evidence suggesting a "request to move across the street to another location would have had any success." [***Ex. K***, at 3]. In fact, Plaintiff ignored Officer Klamser's direction to "keep walking" [MSMF 20-21]. Plaintiff also mis-cites Deputy Chief Yeager's testimony. Deputy Chief Yeager agrees Surat did not pose a threat, as she did not have a weapon. This testimony cannot be presented in a form that would be admissible at trial, as Deputy Chief Yeager had no personal knowledge prior to Ms. Surat's arrest, whether or not she had a weapon [*See* Fed. R. Evid. 602].

28. Plaintiff's response is unclear, as it offers no evidence refuting MSMF 28, including Officer Klamser's Police Report [ECF 118-1, at 4-5], Officer Klamser's body cam [Def. Ex. B, at 01:00 to 01:17], Officer Pastor's Supplemental Police Report [ECF 118-2, at 2], and Officer Klamser's Trial Testimony [ECF 118-6, at 48:17-25]. Plaintiff does not refute Surat was trying to spin around and break free, while Officer Klamser had ahold of her wrist.

29. Deny. Plaintiff does not address Officer Klamser's inability to place Plaintiff in an escort hold, or his attempt to transition to a wrist control hold. Plaintiff also mis-cites Deputy Chief Yeager's testimony. [*See* RCUF 24, above].

32. Plaintiff's statement is speculative, and therefore not in a form which would be admissible at trial, pursuant to Fed. R. Evid. 602.

33. Plaintiff ignores the testimony of Officer Klamser and Mr. Findlay, and mis-cites Deputy Chief Yeager's testimony [*See* RCUF 24 & 29, above]. Plaintiff's statement ignores Surat's convictions, and the failure of her self-defense argument at the criminal trial. [ECF 84 at 14-15]. Plaintiff provides no facts or evidence establishing Officer Klamser's takedown was objectively unreasonable under the circumstances set forth in Defendants' Motion for Summary Judgment. Plaintiff fails to address that Officer Klamser was attempting to effectuate an arrest, and in the process Plaintiff's actions were subjecting him to violence, and putting him at substantial risk of bodily injury. [ECF 84 at 14-15]. Plaintiff's convictions establish these facts [ECF 84 at 14-15]. In attempting to effectuate Surat's arrest, Officer Klamser attempted to use less-intrusive means, which were unsuccessful [*See* RCUF 22-24, & 27-29, above]. Based on Surat's refusal to heed Officer Klamser's lawful verbal orders, her "pawing, clawing, and battling" directed at Officer Klamser, her striking and grabbing at Officer Klamser, the take-down was objectively reasonable. [***Ex. K***, at 3-4]. Montgomery opines a take-down may be used when an Officer is being attacked [***Ex. N***, at 54:5-7]

34. Officer Klamser denies he was required to use other techniques, as the take-down method properly addressed Plaintiff's resistance [***Ex. K***, at 3-4; c.f. RCUF 22-24, & 27-29, above]. Montgomery is not familiar with the technique used by Officer Klamser [***Ex. N***, at 50:17-22]. Montgomery has no basis to opine another technique should have been used [***Ex. N***, at 57:7-12]. Plaintiff mis-cites Deputy Chief Yeager's testimony. Plaintiff's Counsel asks Deputy Chief Yeager if Officer Klamser could have used a "pain compliance technique" to which Deputy Chief Yeager responded, "I don't believe he could have based on her resistance. I don't think that he had the position required to use a pain compliance technique." [Pltfs. Ex. 5, at 77:4-10]. Furthermore,

Mr. Montgomery's opinion is based on "20/20" hindsight, which is inappropriate. [***Ex. K***, at 2; ***Ex. N***, at 92:6-23 ]. The argument Officer Klamser could have utilized an "escort technique to move Surat," is also speculative, and not in a form which would be admissible at trial, pursuant to Fed. R. Evid. 602. Plaintiff's argument ignores Officer Klamser's attempt to first use a lesser degree of force, which was unsuccessful [*See* RCUF 22-24, & 27-29, above].

35. Admit Mr. Montgomery refers to the rowing arm take down as a "face plant". Admit Deputy Chief Yeager describes the rowing arm take down as a method to direct the person to the ground for "prone control." Deputy Chief Yeager also testified placing someone in a prone position "take(s) away their ability to twist and turn and fight" and is one of the greatest levels of control [ECF 128-5, at 59:12-18]. Mr. Black opines putting someone on the ground is the best possible way to control and handcuff an individual [***Ex. K***, at 4]. Plaintiff offers no evidence refuting Officer Klamser's testimony, that the purpose of the rowing arm take down is to break the person's tunnel vision and concentration, and obtain compliance with the commands being given [ECF 118 at MSMF 35].

36. Deny. Plaintiff's response ignores Findlay's testimony [*See* RCUF, 21-22, and 24, above] and Officer Klamser's testimony [*See* MSMF 24]. Plaintiff's position ignores Surat's convictions, the elements of which include the use or threatened use of physical force or violence against a police officer [*See* ECF 84 at 14, citing C.R.S. § 18-8-103(1), and § 18-8-104(1)(a); *See also* MSMF 43 & 44].

37. Deny. Plaintiff offers no testimony refuting Officers Klamser or Pastor's report. Plaintiff was moved to a kneeling position by Officers Pastor and Klamser [Defs. Ex. B, at 01:48]. Admit Surat's buttocks were partially exposed. Deny she moved to her knees on her own volition.

Surat was lifted to her feet by Officers Pastor and Klamser [Ex. B at 01:48], and taken through Old Town Square. Deny she was "paraded" as that is a conclusory statement. Deny Plaintiff's assertion in footnote 4, as no proper support is provided. *See* Court's Practice Standard, III(F)(4)(e). To the extent any such statements are considered, there are no allegations in the operative complaint respecting a claim of excessive force after the takedown. Fed. R. Evid. 401 & 402.

38-39. Plaintiff admits MSMF 38 and 39. Admit she told Officer Klamser he was hurting her. Admit Plaintiff testified she was in pain. Plaintiff does not dispute she told Officer Klamser she would stand up, if he let her go [*See* MSMF 38].

40. Deny. Plaintiff offers no evidence refuting Findlay's statements or testimony [*See* MSMF 40]. [*See also **Ex. L***, at 33:18-19; 42:6-8]. Plaintiff provides no evidence refuting Officer Klamser's report [MSMF 40]. Plaintiff's assertion regarding Findlay's credibility violates the Court's Practice Standard III(F)(4)(e) and improperly asks the Court to assess credibility. "It is axiomatic that a judge may not evaluate the credibility of witnesses, in deciding a motion for summary judgment." [***Seamons v. Snow***, 206 F.3d 1021, 1026 (10th Cir. 2000), referring to ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 255 (1986), and ***Koopman v. Water Dist. No. 1***, 972 F.2d 1160, 1164 (10th Cir. 1992) (quoting ***Anderson***)].

41. Deny. MSMF 41 does not state Plaintiff tried to "run-away". MSMF states Plaintiff tried to "turn away" from Officer Mast, multiple times [MSMF 41]. Plaintiff provides only a conclusory statement, and no evidence refuting the factual statements in MSMF 41.

42. Deny. Plaintiff offers nothing but a conclusory statement. Fed. R. Evid. 602.

45. Deny. Plaintiff's assertion is conclusory. Fed. R. Evid. 602. Plaintiff offers no evidence refuting Officer Klamser's testimony.

46. Plaintiff's assertion violates Practice Standard III(F)(4)(e). To the extent the response is considered, any such response is denied, as it does not take into consideration Plaintiff's convictions, Plaintiff's willful refusal to heed Officer Klamser's lawful verbal orders, Plaintiff's "pawing, clawing, and battling" directed at Officer Klamser, Plaintiff's striking and grabbing at Officer Klamser, and Findlay's testimony. The take-down was not objectively unreasonable. [*See* RCUF 33, above; *See also* ***Ex. K***, at 3-4].

## III. <u>RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED FACTS ("RSADF")</u>

1. Admit C.R.S. § 18-8-103(1) and § 18-8-104(1)(a) are misdemeanor crimes. Deny that they are "minor". Deputy Chief Yeager did not testify the crimes of obstruction and resisting arrest are "minor." [*See* ECF 128-5 at 32:15-18]. Admit Pastor testified the "seriousness" of the misdemeanor was minor.

2. Admit the jury instruction on page 7 was given, but deny it was the only "relevant" jury instruction as Plaintiff provides no basis to make such a determination. Fed. R. Evid. 602. Deny the assertion in footnote 5, as Plaintiff provides no evidence supporting the notion Surat was convicted of one section of C.R.S. § 18-8-103, as opposed to another section. The fact is Surat was convicted of C.R.S. § 18-8-103 as a whole, and neither the initial Complaint, Amended Complaint, or Court records make any such distinction. [*See* ECF 1, at ¶37; ECF 107, at ¶38].

3. Deny. The full instruction for obstruction of a police officer was provided in instruction number 6. [ECF 128-11, at 8; *See also* RSADF 2, above].

4. Deny. Plaintiff's response ignores the testimony of Findlay [*See* RCUF 21, 22, 24, & 36, above; *See also* ***Ex. L***, at 33:18-19; 42:6-8], and Officer Klamser [ECF 118-1, at 4-5. Plaintiff's position ignores Surat's convictions, the elements of which include the use or threatened

use of physical force or violence against a police officer [ECF 84 at 14, citing C.R.S. § 18-8-103(1), and § 18-8-104(1)(a); *See also* MSMF 43 & 44]. Plaintiff mis-cites the testimony of Deputy Chief Yeager, [*See* RCUF 24 & 25, above], and Officer Pastor [ECF 128-1, at 4:8-25].

5. Deny. Plaintiff's response ignores the testimony of Findlay [*See* RCUF 21, 22, 24, & 36, above; *See also* ***Ex. L***, at 33:18-19; 42:6-8], and Officer Klamser [ECF 118-1, at 4-5]. Plaintiff's position ignores Surat's convictions, the elements of which include the use or threatened use of physical force or violence against a police officer [*See* RSADF 4, above; *See also* MSMF 43 & 44].

6. Deny. Plaintiff's response ignores Findlay's testimony, [*see* RCUF 21, 22, 24, & 36, above; *see also* ***Ex. L***, at 33:18-19; 42:6-8], and Officer Klamser. [ECF 118-1, at 4-5]. Plaintiff's position ignores Surat's convictions. [*See* RSADF 4 & 5, above; *See also* MSMF 43 & 44]. Additionally, Plaintiff's argument set forth in ftnt 6 is an impermissible attempt at seeking reconsideration of the Court's previous rulings, and should therefore be stricken [*See* ECF 84 at 14-15].

7. Admit.

8. Deny. Plaintiff mis-cites Officer Klamser's testimony, as he testified he did not see a weapon, not that it was "clear to Klamser…that Surat was unarmed." [ECF 128-7, at 64:22-25; 65:1-2]. Plaintiff also mis-cites Officer Pastor, who testified Surat did not appear to be armed in any way. [ECF 128-1, at 42:23-25]. Additionally, Officer Pastor testified he did not see a weapon in Surat's hand-not that "it was clear to…Pastor that Surat was unarmed." [Dep. of Garrett Pastor, ***Exhibit M***, at 26:19-22].

9. Admit.

10. Admit.

11. Admit.

12. Admit.

13. Deny. Plaintiff mis-cites Officer Klamser's testimony, as he does not indicate whether he thought Surat might be violent. [ECF 128-7, at 65:3-25; 66:1-10]. Plaintiff provides no logical basis to equate a "college girl who was wearing clubbing clothing [and] out for a good time in Old Town", as being non-violent.

14. Admit.

15. Admit Officer Klamser had Surat by her wrist. Deny whether such restraint "greatly reduced her flight risk." The assertion is speculative and not in a form which would be admissible at trial. Fed R. Evid. 602 & 702.

16. Admit the purpose of the rowing arm takedown was to put Surat on the ground, and gain control. Deny to the extent Plaintiff asserts Officer Klamser's only goal throughout the entire encounter was to put Surat on the ground. To the contrary, Officer Klamser attempted to use lesser "degrees" of force, including verbal commands, and telling Surat she could "keep walking". Commands she chose to ignore. [MSMF 20 & 21].

17. Deny. Plaintiff's assertion is conclusory and not in a form which would be admissible at trial. Fed. R. Evid. 602. Plaintiff's response ignores the testimony of Findlay, [*see* RCUF 21, 22, 24, & 36, above; *see also* ***Ex. L***, at 33:18-19; 42:6-8], and Officer Klamser. [ECF 118-1, at 4-5]. Plaintiff's position ignores Surat's convictions. [*See* RSADF 4-6, above; *See also* MSMF 43 & 44]. Additionally, Plaintiff's citation to her First Amended Complaint is insufficient. "(T)he nonmoving party cannot rely solely on the allegations in the pleadings and must supply

evidence of a question of fact for the case to go to the jury." [***Kelley v. Goodyear Tire & Rubber Co.***, 220 F.3d 1174, 1177 (10th Cir. 2000), citing ***Aramburu v. Boeing***, Co., 112 F.3d 1398, 1402 (10th Cir. 1997)].

18. Admit.

19. Deny. The cited portion of Montgomery's report does not state a "considerable amount of force" was used to effectuate the rowing arm takedown. Further, any such opinion is speculative, and therefore not in a form which would be admissible into evidence. Fed. R. Evid. 602 & 702; ***Ex. N*** at 50:17-22]. In addition, Officer Klamser stated it was a "lot of force", not a "considerable amount of force." [ECF 128-7 at, 36:4-9]. Officer Pastor did not speculate as to the amount of force used [ECF 128-1 at, 20:9-20]. The Defendants admit force was used to effectuate the rowing arm takedown, but deny her head struck the pavement first. [*See* ECF 128-4, at 00:04; ECF 128-9, at 26-31].

20. Admit the rowing arm takedown cannot be done slowly and gently. Deny Officer Klamser testified a "lot" of force was required [Ex. 7, 79:14-17].

21. Deny Surat's head hit the pavement first. [*See* ECF 128-4, at 00:04; ECF 128-9, at 26-31]. Officer Klamser did not testify Surat's head hit the pavement first. Rather, he testified her head hit the pavement. [*See* ECF 128-7, at 78:15-20].

22. Admit. Deputy Chief Yeager, however, is not a medical professional and the context of "serious bodily injury" is not defined by the Plaintiff. The opinion would be inadmissible at trial pursuant to Fed. R. Evid. 602 & 702. Further, there is no evidence Surat suffered a traumatic brain injury. The opinion would also be excluded under Fed. R. Evid. 401 & 402.

23. Admit Plaintiff suffered a concussion and a large contusion on her chin, knees, and arms. Deny she suffered a traumatic brain injury, as the records do not reflect any such diagnosis. Any such opinion is not in a form admissible at trial, pursuant to Fed. R. Evid. 602. Deny Surat suffered a cervical strain or neck pain, as there is no indication in the record cited. Denied Plaintiff had trouble chewing and opening her mouth fully for approximately five to six months after the incident, as Plaintiff provides no medical records or testimony to substantiate the claims. Furthermore, Plaintiff cannot merely rely on the allegations of her Complaint. ***Kelley,*** *supra.* Admit Plaintiff testified she received death threats, although no such testimony or evidence is provided with her response.

24. Admit Dan Montgomery is the retired Chief of Police of Westminster with a 47-year history as a police officer, twenty-five of which were as a Chief of Police. Admit he was a past President of the Colorado Association of Chiefs of Police and is the owner and CEO of Professional Police and Public Safety Consulting, LLC. Admit Mr. Montgomery opined a use of force must meet the "test of proportionality", and Officer Klamser deviated from said guideline. Deny the "test of proportionality" is a valid guideline or applicable to Plaintiff's Fourth Amendment claim, based on the applicable case law, the Court's previous ruling, and Plaintiff's convictions [*See* eg. ECF 84, at 14 ("Excessive Force under the Fourth Amendment means that the police officer seized the person with more force than was objectively reasonable under all the circumstances then known to the officer, with due 'allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation'") citing ***Graham v. Connor***, 490 U.S. 386, 396-97 (1989); *See also* ECF 84 at 15 ("To avoid implying the invalidity

of these convictions, Surat must prove that Klamser's takedown was objectively unreasonable under all the circumstances while taking as given that he was attempting to effect an arrest and, in the process, the arrestee's actions were subjecting him to, or threatening him with, physical force or violence, or putting him at substantial risk of bodily injury.")]; *See also* ***Ex. K***, at 2 ("Mr. Montgomery's alternatives to handling the encounter with Ms. Surat and Mr. Waltz and the subsequent takedown executed by Officer Klamser do not adequately address the 'split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving' that are articulated in Graham vs Connor. Further, Mr. Montgomery uses the 20/20 hindsight that the Supreme Court discouraged. The circumstances that required Officer Klamser to execute a takedown developed in less than a minute.").] Montgomery admits the "guidelines" do not usurp applicable case law including ***Graham v. Connor*** [***Ex. N***, at 88:2-10]. Montgomery is second guessing Klamser's actions [***Ex. N***, at 92:6-12]. Montgomery admits there is nothing to support the notion his "guidelines" apply to Officer Klamser [***Ex. N***, at 85:13-16].

25. Deny. Plaintiff mis-cites Officer Klamser's testimony. Officer Klamser does not testify he failed, or even needed to consider all options [ECF 128-7, at 66:22-25; 67:1-2]. Plaintiff also mis-cites Montgomery's opinions, as he does not testify Officer Klamser either failed or needed to consider all options prior to the takedown. Plaintiff also mis-cites Officer Pastor's deposition. Officer Pastor does not testify that Officer Klamser failed to consider all options [ECF 128-1, at 15:9-25; 16:1-24; 27:17-24; 28-1-5].

26. Admit police officers are trained in both defensive and arrest-control tactics. Deny to the extent Plaintiff incorporates RMMF 35. A "face plant" is not a defensive tactic. [***Ex. L***, at 4 ("Takedowns are normally considered on the same level as empty-hand control.")].

27. Deny. Mr. Montgomery fails to take into consideration Surat's conviction for resisting arrest and obstruction of a police officer, and the failure of her self-defense argument at the criminal trial, Plaintiff's convictions, the applicable case law, and the Court's previous ruling [*See* ECF 84, at 14-15; *See also* ***Ex. N***, at 64:21-25; 65:1-25].

28. Deny. Montgomery fails to take into consideration Surat's conviction for resisting arrest and obstruction of a police officer, and the failure of her self-defense argument at the criminal trial, Plaintiff's convictions, the applicable case law, and the Court's previous ruling. [*See* ECF 84, at 14-15; ***Ex. N***, at 64:21-25; 65:1-25].

29. Deny. Plaintiff mis-cites Officer Klamser's testimony, as he is being asked about striking someone in the head with a baton. Furthermore, Mr. Black opines Mr. Montgomery creates his own definition of deadly force, and most agencies across the county would take issue with the explanation that police officers are taught, or should be taught, to avoid striking and causing blunt trauma to an individual's head, except in the most exceptional of cases where the officers may be engaged in a deadly force confrontation. [***Ex. L***, at 5]. In addition, Mr. Montgomery's self-derived definition of "deadly force" in a Fourth Amendment context, has been rejected. *See* ***Scott v. Harris***, 550 U.S. 372, 382 (2007) ("Although respondent's attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the factbound morass of 'reasonableness'").

30. Deny. *See* response to RSADF 29 above.

31. Deny. Plaintiff's assertion is speculative, and therefore not in a form which is admissible at trial. [Fed. R. Evid. 602. *See also* ***Ex. L***, at 3-6].

32. Deny. *See* response to RSADF 24 above.

33. Deny. Plaintiff's assertion and Montgomery's opinions are speculative and therefore not in a form which would be admissible at trial. Furthermore, as Plaintiff points out, a police officer is not required to use alternative, less intrusive means of force. [ECF 128, at 15, ftnt. 7 citing ***Estate of Ceballos v. Husk***, 919 F. 3d 1204, 1214 (10th Cir. 2019)]. Plaintiff's assertion also fails to take into consideration Surat's conviction for resisting arrest and obstruction of a police officer, the failure of her self-defense argument at the criminal trial, Plaintiff's convictions, the applicable case law, and the Court's previous ruling [*See* ECF 84, at 14-15; *See* also RSADF 4].

34. Deny. *See* response to RSADF 1 above.

35. Deny. *See* response to RSADF 33 above.

36. Deny. *See* response to RSADF 33 above. *See also* ***Ex. L***, at 3-5.

37. Admit.

38. Deny. Plaintiff mis-cites Officer Klamser's testimony. Officer Klamser does not testify he was *trained* to use the same amount of force. Rather, he testified he uses the same amount of force when executing the technique [ECF 128-7, at 88:10-25; 89:1-12].

39. Admit Officer Klamser and Officer Pastor testified that the actions taken by Klamser were consistent with the customs, policies, and practices of Fort Collins Police Services.

40. Admit Deputy Chief Yeager testified the body-cam video could be used to show recruits the rowing arm technique. Deny Deputy Chief Yeager testified the video could be used to show recruits how to use the technique according to Fort Collins policy [ECF 128-5, at 77:22-25; 78:1-10].

41. Admit.

42. Admit.

43. Admit Officer Al Brown reviewed Officer Klamser's use of force and found that it was consistent with Fort Collins' training on use of force. Deny the cited testimony establishes the conclusion by Al Brown as to when the rowing arm takedown technique was to be used.

44. Deny, as Plaintiff mis-cites Deputy Chief Yeager's testimony. In particular, Deputy Chief Yeager states, "No, we don't - - we don't train our officers that they do exactly what someone else does. Every situation is based on the individual officers, their abilities, their observations, the actions of the other person. And so neither for Mr. Brown or another instructor could they tell someone, "You should do it exactly like this if this came up," because it would depend on that individual officers observations and abilities." [ECF 128-5, at 80:18-25; 81:1].

45. Deny as Plaintiff mis-cites Deputy Chief Yeager's testimony. Deputy Chief Yeager testified, "Again, I believe that the police department could expect that it was one of the possible sets of circumstances that would be within policy." [ECF 128-5, at 89:1-3].

46. Admit.

47. Admit.

48. Admit Fort Collins customs, practices, and policies were the moving force behind Officer Klamser's actions, but deny there were any failures associated with the training provided to Officer Klamser with respect to the rowing arm takedown technique. Any such assertion is conclusory and not supported by any proper evidence submitted by the Plaintiff. Furthermore, it is denied the rowing arm technique was "deadly force" [*See* response to RSADF 29 above, citing ***Scott***, *supra*], or that there was a failure to effectively investigate the takedown or discipline Klamser. It is also denied there was any failure to train or supervise. Montgomery offers no proper

basis to make any such conclusions, and therefore his opinions are not in a form which would be admissible at trial. Furthermore, the rowing arm technique was not objectively unreasonable, given the applicable case law, Plaintiff's actions against Officer Klamser, including hitting, pawing, and refusing to comply with a lawful order, as well as the applicable case law. [*See* eg. ECF 84, at 14-15; *See also* ***Ex. L***, at 3-5].

49. Deny. Montgomery's conclusions are speculative and not based in any proper form which would be admissible at trial. [***Ex. N***, 50:17-22; 54:5-7; 92:6-23; *See also* Fed. R. Evid. 602 & 702].

50. Deny. Montgomery's conclusions are speculative and not based in any proper form which would be admissible at trial. [See response to RSADF 49 above; *See also* Fed. R. Evid. 602 & 702]. Plaintiff's position ignores Surat's convictions, the elements of which include the use or threatened use of physical force or violence against a police officer. [*See* response to RSADF 4 & 5 above; *See also* MSMF 43 & 44].

51. Denied. Plaintiff mis-cites Officer Klamser's testimony. Officer Klamser did not testify that Fort Collins Police Services failed to train him on the appropriate use of physical force. Furthermore, Mr. Montgomery's opinions are speculative, and therefore not in a form which would be admissible at trial. [Fed. R. Evid. 602 7 702; ***Ex. L***, at 7; *See* response to RSADF 49 above].

52. Deny to the extent Plaintiff references the "test for proportionality". *See* response to RSDAF 24 above.

53. Denied. The citation to Montgomery's report references a report by Al Brown. Mr. Brown states the rowing arm take down maneuver, was "agency approved." Furthermore, as testified to by Deputy Chief Yeager, "every situation is based on the individual officers, their

abilities, their observations, the actions of the other person. Neither Mr. Brown or another instructor would tell someone, 'You should do it exactly like this if this came up,' because it would depend on that individual officers observations and abilities." [ECF 128-5, at 80:18-25; 81:1]

54. Denied. Officer Klamser did not testify he was "poorly trained" [ECF 128-7, at 37:14-23]. Furthermore, Mr. Montgomery's conclusions are speculative, and therefore not in a form which would be admissible at trial. Fed. R. Evid. 602 & 702. Montgomery did not review Officer Klamser's training [***Ex. N***, at 103:5-7].

55. Denied. The assertion by Mr. Montgomery is speculative and not based in any form which would be admissible at trial. Mr. Montgomery is referencing Al Brown's report, which says, "Officer Brown also indicates in his report of February 21, 2018, 'It has been my training and experience that male officers tend to become complacent to female suspect resistance, resulting in additional officers required to control the resistance or increased injury to the officer or suspect. The takedown eliminated the need for additional officers…..' (@ Page 5 of Brown's Report).'"

56. Denied. Plaintiff cannot merely rely on the allegations in her Complaint. ***Kelley,*** *supra*. Furthermore, the assertion is conclusory and therefore not in a form which would be admissible at trial. Fed. R. Evid. 602 & 702.

57. Denied. The assertions are conclusory, and therefore not in a form which would be admissible at trial. Furthermore, the incident is irrelevant to the issues in this matter, as there are no indications provided by the Plaintiff that this matter is similar or consistent with the factual scenario involving Surat [*See* ECF 84, at 16-17 ("Again, to avoid violating *Heck*, it must be taken as given that Klamser was attempting to effect Surat's arrest through a lawful use of lesser force,

and that Surat's resistance amounted to physical force or violence against Klamser and/or threatened him with substantial bodily harm. Surat does not explain why an internal affairs investigation clearing Klamser under *those* circumstances could plausibly suggest unconstitutional policies, and Surat has not alleged any prior use-of-force by a Fort Collins police officer that comes close this factual scenario." (emphasis in original)].

58. Denied. *See* response to RSADF 57 above.

59. Admit that the incident happened, and that the Chancellor matter was settled for $125,000. The remaining assertions are denied. *See* response to RSADF 57 above. Furthermore, Plaintiff cannot merely rely on the allegations in her Complaint. ***Kelley,*** *supra*. This incident is also in a form which would not be admissible at trial, as it is irrelevant. Fed. R. Evid. 401 & 402.

60. Admit the incident happened, and the Patnode matter was settled for $325,000. The remaining assertions are denied. *See* response to RSADF 57 above. Furthermore, Plaintiff cannot merely rely on the allegations in her Complaint. ***Kelley***, *supra*. This incident is also in a form which would not be admissible at trial, as it is irrelevant. Fed. R. Evid. 401 & 402.

61. Admit the incident happened, and the Slatton matter is still in litigation. The remaining assertions are denied. *See* response to RSADF 57 above. Furthermore, Plaintiff cannot merely rely on the allegations in her Complaint. ***Kelley***, *supra*. In addition, Plaintiff mis-cites the Court's Order as it did not find the other officer's actions (Officer Barnes) excessive, nor is any liability imposed on the City. [***Slatton v. Hopkins***, No. 18-cv-3112-RBJ, (D. Colo.) ECF 114, at 21]. In addition, the Court found Chief Hutto and Officer Barnes were entitled to qualified immunity [***Slatton***, *supra*, at ECF 114, at 24]. The matter is irrelevant. Fed. R. Evid. 401 & 402.

62. Admit.

63. Admit.

64. Admit.

65. Admit, however, to the extent Plaintiff intends on calling Officer Klamser's credibility into question, any such argument is inappropriate in a motion for summary judgment. ***Seamons****, supra,* ***Anderson****, supra, and* ***Koopman****, supra.*

66. Admit. *See* response to RCUF 40 above.

67. Admit.

68. Deny. Plaintiff mis-cites Officer Pastor's testimony. Officer Pastor testified it appeared Surat was trying to pull away from Officer Klamser. But his testimony was limited to "one-clip" of a body-cam video. [ECF 128-1, at 46:8-47:3].

69. Admit that is what Mr. Montgomery opined.

70. Admit Findlay testified as indicated in RSADF 70. Deny Findlay contradicted himself. In addition, assessment of a witness credibility is improper in a motion for summary judgment. ***Seamons****, supra,* ***Anderson****, supra, and* ***Koopman****, supra.*

71. Admit Findlay testified that the crowd reacted four times. Denied that his testimony is "demonstrably false". Plaintiff's assertion requires an assessment of credibility, which is improper in a motion for summary judgment. ***Seamons****, supra,* ***Anderson****, supra, and* ***Koopman****, supra.*

72. Admit Findlay testified as set forth in Plaintiff's assertion. Deny Plaintiff's assertion regarding what a reasonable jury would believe. Assessment of credibility is improper. ***Seamons****, supra,* ***Anderson****, supra, and* ***Koopman****, supra.*

73. Denied there is any contradiction or inconsistency between Findlay's testimony and his police statement. Plaintiff provides no specifics as to what is inconsistent. In addition, assessment of credibility is improper. ***Seamons***, *supra*, ***Anderson***, *supra, and* ***Koopman***, *supra.*

74. Admit. The assertions are how Mr. Esslinger testified.

75. Admit. The assertions are how Mr. Esslinger testified.

76. Denied. Mr. Esslinger did not testify that he was not focused on the interaction between Klamser and Surat. Furthermore, to the extent Plaintiff is attacking Mr. Esslinger's credibility, such an approach is improper. ***Seamons***, *supra*, ***Anderson***, *supra, and* ***Koopman***, *supra.*

## IV. <u>ARGUMENT</u>

### A. Officer Klamser Is Entitled To Qualified Immunity

#### 1. An Analysis Regarding The Reasonableness Of Officer Klamser's Use Of Force, Must Also Consider The Totality Of The Circumstances

In her response, Plaintiff relies on the Supreme Court's three, non-exclusive, "Graham factors" to determine the reasonableness of Officer Klamser's use of force. [***Graham v. Connor***, 490 U.S. 386, 396 (1989), referring to ***Tennessee v. Garner***, 471 U.S. 1, 8-9 (1985)]. Plaintiff's analysis, however, treats these factors as the only basis by which to determine whether Officer Klamser's use of force was objectively reasonable. Such an approach is improper, as it ignores other factual considerations as part of a "totality of the circumstances" approach. In ***Graham***, the Court concluded the test of reasonableness under the Fourth Amendment was, "not capable of precise definition or mechanical application." [***Graham***, *supra*, citing ***Bell v. Wolfish***, 441 U.S. 520, 559 (1979)]. For this reason, the Court concluded the three factors were to be considered with other factual considerations surrounding a use of force. The "proper application [of

reasonableness] requires careful attention to the facts and circumstances of each particular case, *including* the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. [***Graham***, *supra*, (emphasis added) referring to ***Garner***, *supra*]. Use of the three ***Graham*** factors is, therefore, not the only means by which a use of force is to be examined. "In determining whether an officer's use of force was excessive, many cases have focused solely on the three factors specifically described in *Graham* [citation omitted]. However, these three factors were not intended to be exclusive, and the circumstances of a particular case may require the consideration of additional factors." [***Aldaba v. Pickens***, 777 F. 3d 1148, 1155 (10th Cir. 2015), referring to ***Casey v. City of Fed. Heights***, 509 F.3d 1278, 1281 (10th Cir. 2007)]. Plaintiff's analysis of the three *Graham* factors, without consideration of her convictions, is incomplete.

**i. Plaintiff's convictions (First *Graham* factor)**

Plaintiff was convicted of two misdemeanors, the elements of which involved the use of, or threatened use of, physical force or violence against Officer Klamser, as well as the use of, or threatened use of, violence and/or force to obstruct the enforcement of the penal law. [ECF 84 at 14, citing C.R.S. § 18-8-103(1), and 18-8-104(1)(a); *See also* MSMF 43 & 44]. To prove the takedown was objectively unreasonable, Plaintiff must establish the severity of the crime (i.e., the first *Graham* factor) while taking into consideration Officer Klamser "was attempting to effect an arrest and, in the process, the arrestee's actions were subjecting him to, or threatening him with, physical force or violence, or putting him at substantial risk of bodily injury." [ECF 84 at 15, comparing ***Martinez v. City of Albuquerque***, 184 F. 3d 1123, 1127 (10th Cir. 1999)]. Based on the rejection of her self-defense argument at her criminal trial, any analysis into reasonableness

must also account for Officer Klamser's attempt to arrest Surat through lawful lesser force. [ECF 84 at 15]. These considerations are part of the "totality of the circumstances," and therefore Plaintiff cannot avoid the fact she was violent towards Officer Klamser. To argue otherwise, implies the invalidity of Surat's convictions pursuant to ***Heck***. Surat's convictions and the elements of violence are conclusively proven, and when read in conjunction with the facts of this matter, her crimes were anything but minor misdemeanors as suggested by Plaintiff. In particular, it is established Officer Klamser attempted to first use a "lesser degree of force," by telling Surat she could "keep walking" [MSMF 20]. A directive she ignored [MSMF 21]. Officer Klamser's additional attempts include putting his left hand up to try and block Surat, telling her "no", and pointing away from where Officer Pastor was attempting to interview Mr. Waltz [MSMF 22]. It was Plaintiff's belligerent actions which escalated her own involvement with Officer Klamser, and in-turn escalated the requirement for a greater use of force to arrest her. [MSMF 22 & 23]. Surat began to hit Officer Klamser [MSMF 24 & 36], and even grabbed his throat [MSMF 25]. After informing Plaintiff she was under arrest, further verbal efforts by Klamser included telling Surat multiple times to place her hands on her head. Those attempts were also ineffective [MSMF 26 & 27]. Officer Klamser continued with lesser force approaches, by attempting to place her in a wrist hold. But, Surat continued to be uncooperative [MSMF 28-30]. Klamser even used verbal warnings about placing Surat on the ground, but his approach was again ineffective at gaining compliance [MSMF 31-32]. Before Surat could hit Officer Klamser again, he executed the rowing-arm takedown. [MSMF 40]. These are the circumstances by which Plaintiff's analysis of the first *Graham* factor, should be considered.

Plaintiff posits the rowing-arm takedown is not a minimal use of force. Such a conclusory statement, however, fails to consider the purpose of the maneuver, which is to break an arrestee's tunnel vision and place them on the ground in order to gain control of the situation. [***Ex. L***, at 4; *See* also MSMF 35]. Here, Officer Klamser attempted a number of times to gain control through lesser uses of force, which were ultimately unsuccessful. Given the size and reaction of the crowd, and the speed by which the situation was unfolding, it was Officer Klamser's justified belief the rowing-arm takedown was the only thing he had left to use [MSMF 34]. Given the totality of the circumstances, the first *Graham* Factor weighs in favor of Officer Klamser.

**ii. Plaintiff's Determination Surat Did Not Pose A Threat Is Improperly Made With 20/20 Hindsight (Second *Graham* Factor)**

In assessing the second ***Graham*** Factor, Plaintiff argues Surat was unarmed and therefore did not pose a threat. [ECF 128, at 29]. Plaintiff's position, however, ignores the notion this matter is to be assessed from Officer Klamser's perspective, and not with 20/20 hindsight [ECF 128, at 25, citing ***Cortez v. McCaulty***, 478 F.3d 1108, n. 25 (10th Cir. 2007)]. To do otherwise ignores the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation." [***Graham,*** *supra*, at 396-397.] Ultimately, it was determined *after* the arrest Surat was definitively unarmed. But, there are no facts supporting an argument that at any time prior, a substantive assessment would conclude Surat did not pose any threat to Officers Klamser or Pastor. As pointed out by Don Black, the situation unfolded in a matter of seconds [***Ex. K***, at 3], giving very little time to assess the matter. Without the benefit of hindsight, Plaintiff cannot properly equate a "young college woman dressed to go out on the town" as someone who did not pose a threat. [ECF 128, at 29].

Furthermore, the case law cited by Plaintiff with respect to the second ***Graham*** factor, is factually distinguishable. For example, in ***Morris v. Noe***, 672 F.3d 1185 (10th Cir. 2012), the plaintiff was not confrontational or aggressive towards the officer. Additionally, there is no indication the plaintiff was convicted of a crime involving violence directed towards a police officer, unlike Surat.

As in ***Morris***, *supra*, the plaintiff in ***Cook v. Peters***, 604 Fed. App'x 663 (10th Cir. 2015) [ECF 128, at 28], was not convicted of a crime involving violence towards a police officer. The analysis which assesses whether ***Heck*** might be invalidated, is not present in ***Cook***. Furthermore, ***Cook*** is an unpublished decision, which cannot form the basis of clearly established law. "We have held that '(a)n unpublished opinion…provides little support for the notion that the law is clearly established on [a] point' [citation omitted]…But an unpublished opinion can be quite relevant in showing that the law was *not* clearly established." ***Grissom v. Roberts***, 902 F.3d 1162, 1168 (10th Cir. 2018), citing ***Mecham v. Frazier***, 500 F.3d 1200, 1206 (10th Cir. 2007). Lastly, in ***Shannon v. Koehler***, 616 F.3d 855 (8th Cir. 2010), Plaintiff admits the matter is distinct, in that no consideration with respect to ***Heck*** was made. [ECF 128, at 29, ftnt. 8]. The second *Graham* Factor, therefore weighs in favor of Officer Klamser.

**iii. The Notion Surat Was Actively Resisting Arrest, Is Conclusive To The Third *Graham* Factor.**

Plaintiff admits "some force" was necessary but the force was not "proportionate to the resistance offered." Her approach obfuscates any analysis of the third ***Graham*** factor, and instead jumps straight to the entire analysis of whether the use of force was reasonable. Such an approach is not supported by the case law cited by Plaintiff. For example, Plaintiff cites ***Roe v. Cushing***, 1993 U.S. App. LEXIS 3404 at *8 (10th Cir. 1993) [ECF 128, at 31], and argues the third ***Graham***

factor considers the proportionality of the resistance offered. But the citation is simply wrong. In considering the *entire fact pattern*, the ***Roe*** court stated in *dicta*, "it is not clear that the force used was proportionate to the resistance offered." ***Id.*** There is no substantive discussion indicating any such approach was "critical" to analysis of the third ***Graham*** factor, as argued by Plaintiff. [ECF 128, at 31]. Plaintiff's other citations are factually distinguishable from this matter. For example, in ***Long v. Fulmer***, 545 Fed. App'x 757 (10th Cir. 2013) [3], the resisting arrest charge filed against the Plaintiff was dismissed. ***Long***, 545 Fed. App'x at 759. Thus, no adjudication with respect to the arrestee subjecting the officer to violence or a threat of violence, or even an analysis of an attempt to use a lesser degree of force, is provided. In ***Fancher v. Barrientos***, 723 F.3d 1191, 1201 (10th Cir. 2013) [ECF 128, at 34], the Court analyzed the fact the defendant officer had time between the first and second shots to take a few steps back, and assess the situation [***Fancher***, 723, F.3d at 1200.] Here, the situation with Surat developed within a matter of seconds [***Ex. K***, at 3], and there was no "measured conversation" with Plaintiff [ECF 128, at 34]. In ***Davis v. Clifford***, 825 F.3d 1131 (10th Cir. 2016), Plaintiff's charge of driving with a suspended license and failure to provide proof of automobile insurance, C.R.S. § 42-7-422, does not have the elements of using or threatening to use violence, unlike Surat's crimes. In addition, as with ***Roe***, *supra*, there is no substantive discussion regarding application of a proportional use of force. Based on Surat's convictions [MSMF 43 & 44], and consideration of ***Heck***, the third ***Graham*** also factor weighs in Officer Klamser's favor.

Furthermore, all three ***Graham*** factors establish Officer Klamser's use of force was reasonable, and he is therefore entitled to qualified immunity.

---

[3] An unpublished decision.

### 2. Plaintiff Presents No Established Law Demonstrating Officer Klamser's Actions Were Unreasonable.

To overcome qualified immunity, Plaintiff "must prove that it was clearly established as of April 6, 2017, that a police officer attempting to effect an arrest and being subjected to or threatened with physical force or violence, or facing a substantial risk of bodily injury, and who has already tried lawful lesser force to subdue the arrestee, cannot use a takedown maneuver used in this case to eliminate that actual or threatened force or risk of injury." [ECF 84 at 15]. Plaintiff presents no such authority. Furthermore, Plaintiff provides no basis to conclude this matter is "so egregious" as to constitute a constitutional violation under a "sliding scale." [ECF 128, at 35 citing ***Browder v. City of Albuquerque***, 787 F.3d 1076 (10th Cir. 2015). As argued above, all of the case law cited is factually distinguishable from this matter. Plaintiff's claim of excessive force should also be dismissed as the Constitutional right at issue, as framed by this Court, was not clearly established.

### B. The Claim Against the City of Fort Collins Must Be Dismissed as Plaintiff Fails to Sufficiently Allege Municipal Liability.

Plaintiff argues the City failed to adequately supervise and train its officers, resulting in Klamser violating Surat's Constitutional rights. [ECF 128, at 33]. As stated by this Court, the framework by which Surat must prove her claim against the City, needs to consider "Klamser was attempting to effect Surat's arrest through a *lawful* use of lesser force, and that Surat's resistance amounted to physical force or violence against Klamser and/or threatened him with substantial bodily harm." [ECF 84, at 16-17]. Plaintiff provides no argument establishing a failure to train or supervise, on what is otherwise an undisputed "lawful use of lesser force" and takedown, when Surat was using physical force or violence. Plaintiff also points to a "recurring situation" giving

rise to Klamser's takedown [ECF 128, at 40]. But, each of the described circumstances is not "recurring" or even similar. [*See* RSADF, 57-61, above]. As with her arguments respecting qualified immunity, Plaintiff ignores her convictions, which are not present in the other matters. Further, there is no evidence any of the other matters were adjudicated. Merely because Plaintiff's Counsel says they are similar, does not make it so. Likewise, Plaintiff's implication the City "failed" to take disciplinary action, does not make the use of the rowing-arm takedown, unconstitutional. As stated by this Court, "Surat does not explain why an internal affairs investigation clearing Klamser under *those* circumstances could plausibly suggest unconstitutional policies." [ECF 84, at 17 (emphasis in original)].

## IV. CONCLUSION

For all of the foregoing reasons, Defendants Randall Klamser and the City of Fort Collins respectfully request this Court dismiss Plaintiff's claims against them in their entirety, with prejudice, and enter all such additional relief as this Court deems proper.

Dated: January 4, 2021

Respectfully submitted,

s/ *Mark S. Ratner*
Mark S. Ratner, Esq.
John Peters, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300, Denver, CO 80202
303-628-3300 /Fax: 303-628-3368
ratnerm@hallevans.com
petersj@hallevans.com

and

s/ *John R. Duval*

John R. Duval, Esq.
Deputy City Attorney
City of Fort Collins
P.O. Box 580
Fort Collins, CO 80522
(970) 221-6520
jduval@fcgov.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 4th day of January, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David Lane, Esq.
Andrew McNulty, Esq.
Helen S. Oh, Esq.
Killmer, Lane & Newman, LLP
1543 Champa St, Suite 400
Denver, CO 80202
303-571-1000 Phone
303-571-1001 Fax
dlane@kln-law.com
amcnulty@kln-law.com
hoh@kln-law.com

***Attorneys for Plaintiff***

Sarah Stefanick, Legal Assistant to
Mark S. Ratner
Hall & Evans, L.L.C.
1001 Seventeenth St., Suite 300
Denver, CO 80202
Phone: 303-628-3300
Fax: 303-628-3368
ratnerm@hallevans.com

**ATTORNEYS FOR DEFENDANTS**