IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Case No. 19-cv-0901-WJM-NRN

MICHAELLA LYNN SURAT,

    Plaintiff,

v.

RANDALL KLAMSER, in his individual capacity, and
CITY OF FORT COLLINS, COLORADO, a municipality,

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Randall Klamser and the City of Fort Collins, Colorado's (the "City") (collectively, "Defendants") Motion for Summary Judgment ("Motion") (ECF No. 118). For the following reasons, the Motion is DENIED.

### I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and

all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND AND PROCEDURAL HISTORY[1]

This action arises out of an incident on April 6, 2017, when Plaintiff Michaella Surat, at the time a student at Colorado State University at Fort Collins, went to a bar to celebrate her twenty-second birthday. At approximately 11:12 p.m., Fort Collins Police Services ("FCPS") officers, Officer Garrett Pastor and Defendant Klamser, were dispatched to a disturbance at the bar involving Surat's then-boyfriend, Mitchell Waltz. While Pastor spoke with Waltz, Klamser spoke with the bar's bouncer, Cory Esslinger.

As Klamser spoke with Esslinger, Surat walked out of the bar past Klamser and Esslinger. Defendants assert that Surat physically bumped into Klamser and Esslinger, though Surat disputes that she made physical contact with Klamser. (*Id.* at 5; ECF No. 128 at 5.) Pastor's bodycam footage appears to show Surat lightly bumping Klamser as she walked out of the bar. (Ex. I, ECF No. 121 at 00:45–00:55.)

On learning from Esslinger that Waltz had been involved in an altercation, Klamser yelled to Pastor that Waltz was not free to go. Defendants assert that Surat then attempted to pull Waltz away and leave with him. (ECF No. 118 at 6.) Surat

---

[1] The following factual summary is based on the parties' Motions and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. The Court does not cite the briefs for undisputed facts.

2

disputes that she tried to pull Waltz away and states that she had tried to walk away with him only before Klamser said that he was not free to go. (ECF No. 128 at 5.)

Surat attempted to walk toward Waltz while Pastor interviewed him. Defendants assert that Surat attempted to "walk through" Klamser to reach Waltz, which Surat denies. (ECF No. 118 at 7; ECF No. 128-2 at 145–46.) Klamser testified in his deposition that when he tried to block Surat, she started to slap him and put her hands on his throat. (ECF No. 118-6 at 48.) Surat testified in her deposition that she did not physically attack Klamser or put her hands on his throat. (ECF No. 128-2 at 145.)

Klamser then placed Surat under arrest and held her by her wrist. Klamser testified that Surat was hitting him as he attempted to place her in handcuffs, but Surat testified that she did not hit him. (ECF No. 118 at 8; ECF No. 128-2 at 145.) The available footage is not clear as to whether Surat physically assaulted Klamser at this time. (ECF Nos. 121 & 131.) Surat attempted to pry Klamser's fingers off of her arm and pawed at Klamser's arms. (ECF No. 118 at 8; ECF No. 128 at 7.) Klamser then used the "rowing arm takedown" maneuver, throwing Surat to the ground to subdue her. Per her medical records, Surat sustained a concussion, cervical spine strain, contusions to her face, and bruising on her arms, wrists, knees, and legs. (ECF No. 128-12; ECF No. 128-13; ECF No. 128-14.) Surat was charged with and ultimately convicted of resisting arrest and obstruction of a peace officer in violation of Colorado Revised Statute §§ 18-8-103 and 18-8-104(1)(a).

Surat initiated this action on March 26, 2019, asserting claims against Klamser and the City for excessive force in violation of the Fourth Amendment to the

3

Constitution, brought pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Defendants filed their first Motion to Dismiss on June 7, 2019. (ECF No. 23.)

On February 24, 2020, the Court issued its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. (ECF No. 84.) Specifically, the Court granted the Motion to Dismiss with respect to Surat's excessive force claim to the extent it was based on any conduct prior to the takedown, as such challenge was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.* at 17.) The Court also granted the Motion to Dismiss with respect to Surat's claim against the City, finding that she had not alleged the existence of an informal custom or policy which would support a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.*) Surat filed her First Amended Complaint on August 24, 2020, renewing her *Monell* claims against the City. (ECF No. 107.)

Defendants filed their Motion on October 13, 2020, seeking summary judgment on all claims.[2] (ECF No. 118.) Surat responded on November 30, 2020, and Defendants replied on January 4, 2021. (ECF Nos. 128 & 142.)

### III. ANALYSIS

**A. Klamser's Individual Liability**

Defendants assert that Klamser is not liable for Surat's injuries because he is entitled to qualified immunity. (ECF No. 118 at 11.) Specifically, they contend that Klamser did not violate Surat's constitutional rights and that no clearly established law prohibits his allegedly unlawful actions. (*Id.* at 13–18.)

---

[2] Pursuant to the Court's April 12, 2021 Order, Defendants' second Motion to Dismiss (ECF No. 108) was denied as mooted by the instant Motion. (ECF No. 150.)

4

Public employees acting in their individual capacities are presumed to be immune from suit. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990). "In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotation marks and citation omitted). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

      i.    *Constitutional Violation*

Defendants assert that Surat has not demonstrated a genuine issue of material fact as to the existence of a constitutional violation. (ECF No. 118 at 13.) Specifically, they argue that Klamser's use of the takedown maneuver was not objectively unreasonable given that Surat was resisting arrest. (*Id.* at 13–16.)

A plaintiff asserting an excessive force claim based on resisting arrest may prevail if she demonstrates: "(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not *de minimis*, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108 n.25 (10th Cir. 2007). A court considers three factors in determining whether an officer's actions are objectively reasonable in this context: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers, and [3] whether [s]he is actively resisting arrest or attempting

5

to evade arrest by flight." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

First, Surat was convicted of the misdemeanors of resisting arrest and obstruction of a peace officer, which are not severe crimes. *See Roe v. City of Cushing*, 13 F.3d 406 (10th Cir. 1993) (table) (finding conviction of resisting arrest not severe); C*asey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (finding obstruction a minor crime). The first *Graham* factor therefore favors Surat.

Second, at the time of the incident, Surat was a twenty-two-year-old, 115-pound woman, and Klamser was a 30-year-old man standing six feet tall and weighing approximately 200 pounds. (ECF No. 118-1 at 2.) Surat was unarmed, and immediately before Klamser used the takedown maneuver on her, he held her by her wrists as she attempted to pull away from his grip. (ECF No. 118 at 8–9; ECF No. 128 at 11–12; ECF No. 131 at 00:01–00:10.) The video footage of the event does not show that Surat was assaulting or threatening Klamser immediately before he used the takedown maneuver. (Ex. B, ECF No. 121 at 00:57–01:31; ECF No. 131 at 00:01–00:10.) Accordingly, Surat has presented evidence from which a reasonable juror could conclude that she was not an immediate threat to Klamser's safety; the second *Graham* factor therefore favors Surat's position. *See Morris v. Noe*, 672 F.3d 1185, 1189–90 (10th Cir. 2012) (finding excessive force where police officers used takedown maneuver on unarmed, intoxicated man because he posed little to no threat to the safety of officers).

Third, while Surat does not dispute that she resisted arrest, she contends that Klamser used an inappropriate amount of force to subdue her. (ECF No. 128 at 27–30.)

6

The Tenth Circuit has held in several cases that extreme force is unjustified where a plaintiff resisted arrest but the crime was non-severe and the plaintiff did not pose a serious or immediate threat to the officers' safety. *See Long v. Fulmer*, 545 F. App'x 757, 759–60 (10th Cir. 2013) (finding excessive force where officers tackled plaintiff after plaintiff "protested and pulled away" during arrest for unauthorized entry into closed hospital cafeteria); *Roe*, 13 F.3d at 406 (finding takedown maneuver excessive force where plaintiff verbally resisted arrest for possession of a non-intoxicating substance by a minor); *Davis v. Clifford*, 825 F.3d 1131, 1136–37 (10th Cir. 2016) (finding excessive force where officers shattered plaintiff's car window and pulled her through the window despite refusal to exit vehicle).

Specifically, the Tenth Circuit has stated that where the underlying crime is a misdemeanor, an officer should use minimal force to effect an arrest. *See Fisher*, 584 F.3d at 895; *Cook v. Peters*, 604 F. App'x 663, 664–65 (10th Cir. 2015) (finding excessive force where sheriff tackled teenager who weighed 200 pounds less based on misdemeanor breach of peace). Notwithstanding the extent of her injuries as an indication of the extent of the force used against her, Surat submits a police expert report stating that the rowing arm takedown is not minimal force. (ECF No. 128-6 at 11–12.) As Surat has presented evidence that the amount of force used to subdue her was objectively unreasonable considering the *Graham* factors, issues of fact exist as to whether Klamser used excessive force.

Finally, Defendants do not dispute that Surat suffered an injury that was not *de minimis*. As she presents evidence that she suffered a concussion, cervical spine

7

strain, and emotional injuries, the Court is satisfied that she has met this prong of the inquiry. (ECF Nos. 128-12, 128-13 & 128-14.)

"[S]ummary judgment motions may not be granted on any excessive force claims under § 1983 for which any genuine issue of material fact remains—regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." *Bridges v. Yeager*, 352 F. App'x 255, 258 (10th Cir. 2009) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002)). Thus, even assuming that the *Graham* factors do not straightforwardly establish a constitutional violation, Surat has at least offered evidence in the form of video footage and deposition testimony which establish that there exists a genuine dispute of material fact as to whether she presented an immediate threat to Klamser's safety or was a serious flight risk. As such, summary judgment is inappropriate as to the issue of the existence of a constitutional violation.

    ii.    *Clearly Established Law*

Even if a constitutional violation has occurred, a plaintiff still must show that the right violated was clearly established. *See Redmond v. Crowther*, 882 F.3d 927, 937 (10th Cir. 2018). For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Weiss v. Casper*, 593 F.3d 1163, 1167 (10th Cir.2010) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007)). The inquiry should not be "a scavenger hunt for prior cases with precisely the same facts" but instead "whether the law put officials on fair notice that the described conduct was unconstitutional." *Pierce v. Gilchrist*, 359 F.3d 1279,

1298 (10th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2004). Further, where an officer's violation of the Fourth Amendment is clear from the *Graham* analysis, the Tenth Circuit does not "require a second decision with greater specificity to establish the law." *Morris*, 672 F.3d at 1197 (quoting *Casey*, 509 F.3d at 1284).

As discussed above, Surat has presented evidence from which a jury could conclude that Klamser committed a constitutional violation under the *Graham* factors. Moreover, several Tenth Circuit cases support the proposition that an officer may not use a takedown maneuver on an unarmed misdemeanant who poses little to no threat to the officer's safety. *See Long*, 545 F. App'x at 759–60; *Roe*, 13 F.3d at 406; *Morris*, 672 F.3d at 1189–90. The relevant authority in other circuits is in accord. *See, e.g.*, *Shannon v. Koehler*, 616 F.3d 855, 858–63 (8th Cir. 2010) (finding takedown maneuver excessive force where plaintiff had physically struck a woman and aggressively told officer to leave bar premises while in arms-length of officer); *Blankenhorn v. City of Orange*, 485 F.3d 463, 477–79 (9th Cir. 2007) (finding takedown maneuver excessive force where plaintiff pulled free from officers' grasp but posed no serious threat to officers or others and underlying crime was not serious); *Smith v. City of Troy, Ohio*, 874 F.3d 938, 945–46 (6th Cir. 2017) (finding that plaintiff's resistance by pulling arm from officer did not justify knocking his face into the ground).

The weight of authority within and outside the Tenth Circuit illustrates that, even where an arrestee for a minor crime allegedly resists arrest, an officer is not entitled to

9

use an unreasonable degree of force in response. As discussed above, the video footage of the event and the differing testimonial accounts of the incident raise significant and genuine issues of material fact as to whether Surat posed a flight risk or any danger of serious bodily harm to Klamser. (ECF Nos. 121 & 131.) Given the totality of the circumstances, the Court finds that Klamser should have been on notice that his alleged actions—slamming a woman approximately half his size into the ground because she was resisting arrest for a misdemeanor—would violate clearly established law. The Court therefore denies the Motion as to Surat's excessive force claim against Klamser.

**B.     Municipal Liability**

The City asserts that it is not subject to liability because Surat has not demonstrated a genuine issue of material fact as to the existence of a constitutional violation or presented evidence of a custom or policy underwriting the alleged violation. (ECF No. 118 at 18–21.) Surat's theory of liability is failure to train officers on the appropriate use of force in response to resistance of arrest. (ECF No. 107 ¶¶ 95–99.) Thus, although both parties appear to conflate *Monell* liability based on an informal custom or policy and failure to train, supervise, or discipline, the Court construes Surat's claim as premised on the failure to train, as her Amended Complaint and Response focus solely on that theory of *Monell* liability.

Surat argues that the City is liable for failure to train its officers because Klamser used the takedown maneuver in conformance with the City's policy in such situation. (ECF No. 128 at 39.) She asserts that because the maneuver constituted excessive force, Klamser violated her constitutional rights. (ECF No. 107 ¶¶ 95–99.)

"[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989).

> To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Allen*, 119 F.3d at 841–42.

"[E]vidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." *Id.* at 842. Moreover, the Court has previously found that law enforcement officers' use of excessive force in accordance with their training established a *Monell* claim for failure to train. *See Ortega v. City & Cnty. of Denver*, 944 F. Supp. 2d 1033, 1038–39 (D. Colo. 2013) (denying summary judgment on *Monell* failure-to-train claim for excessive force where plaintiff presented evidence that the impermissible force used was in accordance with the officers' training).

First, as discussed above, Surat has presented evidence from which a reasonable jury could conclude that Klamser used excessive force in violation of the Fourth Amendment during her arrest. Further, although Defendants argue that Surat does not allege or provide evidence of other, sufficiently similar excessive-force

11

incidents, this point is immaterial, as even one such event may trigger liability. *See Allen*, 119 F.3d at 842.

Second, the incident underlying this matter arose out of an altercation at a restaurant, a situation which the Court has previously held is usual and recurring such that officers may encounter the situation again. *See Ortega*, 944 F. Supp. 2d at 1038–39. Further, Pastor testified at his deposition that he and Klamser often patrol the area of Fort Collins where the incident occurred and "frequently" respond to altercations involving intoxicated university students such as Waltz. (ECF No. 128-1 at 36–37.)

Third, Klamser, Pastor, and FCPS Deputy Chief Greg Yeager all testified in depositions that Klamser acted in accordance with FCPS training and policy in effecting the rowing arm takedown in response to resistance of arrest. (ECF No. 128-1 at 10–11; ECF No. 128-5 at 58–60; ECF No. 128-7 at 5.) Another officer issued a report stating that the rowing arm takedown was "agency approved" and that FCPS trains its recruits to use this maneuver in the same situation. (ECF No. 128-6 at 12.) Thus, a reasonable juror could conclude that the City's sanctioning of this policy constituted deliberate indifference to the rights of those with whom the officers come into contact. *Allen*, 119 F.3d at 842 (stating that a single instance of excessive force is sufficient to infer municipality's notice that training was inadequate).

Finally, as the Court held in *Ortega*, "a reasonable juror could find that, had [the City] implemented a different training policy on the use of force, [Surat] would not have been subjected to the amount of force used in this case." *Ortega*, 944 F. Supp. 2d at 1039. As Surat has raised genuine issues of material fact as to the constitutionality of employing the rowing arm takedown against her, the Court finds that a reasonable juror

12

could conclude that the City's policy expressly authorizing the maneuver caused the violation of Surat's rights. Defendants' Motion is therefore also denied with respect to the *Monell* failure-to-train claim.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 118) is DENIED; and

2. No later than **July 15, 2021**, the parties shall contact the chambers of United States Magistrate Judge N. Reid Neureiter to schedule a Status Conference so that Judge Neureiter may consider whether this matter is ripe for a final pretrial conference, or such other proceeding as Judge Neureiter deems appropriate.

Dated this 13th day of July, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge